**2022 IL 127527**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket Nos. 127527, 127594, cons.)

JOHN O'CONNELL, Appellee, v. THE COUNTY OF COOK
*et al.*, Appellants.

*Opinion filed May 19, 2022.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J. Burke, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellee, John O'Connell, worked for defendant-appellant the County of Cook (County) and participated in the County Employees' and Officers' Annuity and Benefit Fund of Cook County (Benefit Fund), managed by defendant-appellant Board of Trustees of the County Employees' and Officers' Annuity and Benefit Fund of Cook County (Board). After the Board granted O'Connell's application for

a disability benefit, the County terminated his employment. Shortly thereafter, the Board terminated his disability benefit, and the County ceased making contributions on his behalf to the Benefit Fund. In the circuit court, O'Connell filed a complaint requesting declaratory judgment and *mandamus* relief against the County and the Board, seeking reinstatement of his disability benefit by the Board and contributions to the Benefit Fund by the County. The circuit court dismissed the complaint with prejudice. O'Connell appealed the circuit court's dismissal of counts I, III, and V of his complaint, and the appellate court reversed. For the reasons set forth below, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        Taking as true O'Connell's allegations in his complaint, O'Connell began working for the County in 1999 and became a participant in the Benefit Fund, which involved the County transferring a portion of his salary each month to the Benefit Fund as his employee contribution (40 ILCS 5/9-108 (West 1998)). In 2001, while working for the County, O'Connell was diagnosed with multiple sclerosis. Although he continued to work with accommodations, his health declined as the disease progressed. In 2017, after exhausting his paid leave, O'Connell applied for an ordinary disability benefit[1] with the Board, and the Board granted the benefit to O'Connell in the amount of 50% of his salary (*id.* § 9-157). The Board notified O'Connell that, based on his years of service to the County, his ordinary disability benefit would ultimately expire in August 2021. On May 2, 2019, the Board continued O'Connell's ordinary disability benefit payments through November 30, 2019.

¶ 4        On May 16, 2019, while O'Connell was receiving the ordinary disability benefit payments, the County wrote to O'Connell requesting that he provide medical documentation indicating his expected return-to-work date by May 29, 2019. In the letter, the County stated that if it did not timely receive the requested documentation or if he was not medically released to return to work in any capacity by May 29,

---

[1] O'Connell was granted an "ordinary" disability benefit. The Illinois Pension Code distinguishes between a "duty" disability benefit payable to County employees injured in the course of their employment (40 ILCS 5/9-156 (West 2018)) and an "ordinary" disability benefit payable to those whose disability is not work related (*id.* § 9-157).

2019, he would be administratively separated that same day. The County extended O'Connell's time to provide medical documentation until June 29, 2019, and the County thereafter separated him from the position effective July 1, 2019. After the County terminated O'Connell's employment, the Board ceased paying the ordinary disability benefit due O'Connell, and the County ceased making contributions to the Benefit Fund on O'Connell's behalf.

¶ 5        On January 9, 2020, O'Connell filed a five-count complaint against the County and the Board, alleging that the Illinois Pension Code (40 ILCS 5/9-101 *et seq.* (West 2018)) and the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) entitled him to continued ordinary disability benefit payments even though the County had terminated his employment. The three counts relevant to this appeal are counts I, III, and V.

¶ 6        In count I, O'Connell sought a declaratory judgment that he was entitled to continued ordinary disability benefit payments by the Board, in addition to County contributions to the Benefit Fund, until credit for his years of service expired, which amounted to approximately two more years. O'Connell asserted that an employee granted an ordinary disability benefit while still employed may continue receiving that benefit even if he is terminated from employment, if he is still disabled. O'Connell alleged that, at the end of the period calculated pursuant to his years of service, he would be entitled to an early annuity option (40 ILCS 5/9-160 (West 1998)) and a credit purchase option (*id.* § 9-174) pursuant to the Pension Code. O'Connell thus alleged in count I that the termination of his ordinary disability benefit payments violated the Pension Code and the Illinois Constitution because it deprived him of the ordinary disability benefit, County contributions, early annuity option, and credit purchase option. O'Connell requested the circuit court to order the County and the Board to provide disability benefits effective retroactively to July 2, 2019, until one of the enumerated events in section 9-157(a)-(e) or section 9-159 of the Pension Code occurred. See *id.* § 9-157(a)-(e); *id.* § 9-159.

¶ 7        In count III, O'Connell sought relief in *mandamus* on the same theory but added a specific request for relief against the County to retroactively "reinstate all contributions" to the Benefit Fund. In count III, O'Connell alleged that the Board had no discretion to cease the ordinary disability benefit based on his employment status with the County. O'Connell sought judgment issuing a writ of *mandamus*

ordering the Board to reinstate his ordinary disability benefit and the County to reinstate contributions related to his ordinary disability benefit, effective retroactively to July 2, 2019.

¶ 8 In count V, O'Connell alleged that the Board violated the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) (as applied to the states) and federal civil rights laws, based on the Board's termination of O'Connell's ordinary disability benefit without notice or hearing. In count V, O'Connell sought compensatory damages and an order providing him the ordinary disability benefit until one of the enumerated events in sections 9-157(a)-(e) or 9-159 occurred. See 40 ILCS 5/9-157(a)-(e) (West 1998); *id.* § 9-159.[2]

¶ 9 Both the Board and the County filed combined motions to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). On September 14, 2020, the circuit court granted both motions to dismiss with prejudice. As to the County, the circuit court dismissed count I pursuant to section 2-615 of the Code (*id.* § 2-615), finding that the County had no authority to determine disability benefit eligibility or to distribute disability benefits. The circuit court also dismissed count III pursuant to section 2-615 of the Code (*id.*), finding that O'Connell alleged no statute or contract requiring the County to continue making contributions to the Benefit Fund on his behalf following termination of his employment. The circuit court also dismissed count III pursuant to section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)), finding that O'Connell lacked standing to seek a writ of *mandamus* against the County because he possessed no protectable interest injured by the termination of his employment and the cessation of the County's contributions to the Benefit Fund.

¶ 10 As to the Board, the circuit court dismissed counts I and III pursuant to section 2-615 (*id.* § 2-615) because, based on its interpretation of the Pension Code, O'Connell had no legal tangible interest in continuing disability payments and, thus, counts I and III failed to state a claim as a matter of law. The circuit court also dismissed counts I and III pursuant to section 2-619(a)(9) of the Code (*id.* § 2-

---

[2]In counts II (declaratory judgment) and IV (*mandamus*), pled in the alternative to counts I and III, O'Connell sought reinstatement of his employment with the County and reinstatement of his disability benefits. O'Connell did not appeal the dismissal of counts II and IV.

619(a)(9)) on the basis that O'Connell, as a former employee, was not entitled to receive disability benefits under the Pension Code. The circuit court held that O'Connell had "not identified any section of [a]rticle 9 of the Pension Code which supported the payment of disability benefits to a person no longer employed by the County."

¶ 11    The circuit court dismissed count V's allegations against the Board pursuant to section 2-615 of the Code (*id.* § 2-615), finding that, because O'Connell had no legitimate claim to the disability benefit as a former employee of the County, he was not entitled to any procedural due process and could not maintain a claim under the fourteenth amendment (U.S. Const., amend. XIV) or section 1983 of the Civil Rights Act of 1968 (42 U.S.C. § 1983 (2018)). The circuit court thus granted the County's and the Board's motions to dismiss O'Connell's complaint with prejudice. O'Connell appealed.

¶ 12    The appellate court reversed, holding that O'Connell, as a former County employee, maintained a contractual right pursuant to the Pension Code to receive, postemployment, the ordinary disability benefit by the Board and the required contributions to the Benefit Fund on his behalf by the County. 2021 IL App (1st) 201031, ¶ 24. The appellate court applied the canons of liberal construction and considered the beneficial nature of pension laws to conclude that "[n]othing in the operative language [of the Pension Code] suggests that the disabled employee [who began receiving disability benefits when he was actively working] must continue to be employed to remain eligible for disability benefits or for the county to be required to continue making contributions." *Id.*

¶ 13    Noting that article 9 of the Pension Code set forth "triggering events" that terminated an individual's ordinary disability benefit and that termination of employment was not among those events, the appellate court held that one could "presume that the legislature did not intend to include termination as a triggering event under some other guise." *Id.* ¶ 26. The appellate court concluded that, because article 9's provisions "demonstrate a legislative intent to provide at least several years of benefits to disabled employees to ensure they have some income during their disability and to continue those benefits without a gap onwards into their retirement years," reading termination from employment to disqualify an individual for an ordinary disability benefit would lead to an absurd result, by allowing

counties to "simply fire severely disabled employees even after a brief period of disability" to avoid paying those employees' pension contributions. *Id.* ¶ 27.

¶ 14       The appellate court further concluded that, because O'Connell had a tangible pecuniary interest in his disability benefit and the County contributions to the Benefit Fund, the circuit court should not have dismissed O'Connell's declaratory judgment action. *Id.* ¶ 31. Likewise, the appellate court held that, because following O'Connell's termination the Board had a clear duty to make disability benefit payments and the County had a clear duty to make contributions to the Benefit Fund on his behalf, the circuit court improperly dismissed count III seeking relief in the form of *mandamus* against both defendants. *Id.* ¶ 32. In particular, the appellate court noted that, "under section 9-160 [of the Pension Code (40 ILCS 5/9-160 (West 1998))], the county was required to pay contributions toward O'Connell's early annuity option 'for the maximum time prescribed by this Article,' which in O'Connell's case was about 4½ years—*not* merely until the county terminated him from employment." (Emphasis in original.) *Id.* For the same reason, the appellate court held that the circuit court should not have dismissed count III pursuant to section 2-619 on the basis of lack of standing because O'Connell had the right to continuation of his disability benefit and County contributions to the Benefit Fund after his termination from employment and the relief in count III would have made him whole for his losses. *Id.* ¶ 33.

¶ 15       The appellate court further concluded that, because O'Connell had a protectable right to a continuation of his ordinary disability benefit, count V of the complaint stated a valid cause of action for violation of his due process rights. *Id.* ¶ 34. Accordingly, the appellate court reversed the judgment of the circuit court dismissing counts I, III, and V of the complaint and remanded for further proceedings. *Id.* ¶ 37.

¶ 16       After the appellate court denied the Board's petition for rehearing, the County and the Board filed timely petitions for leave to appeal. On September 29, 2021, this court granted the County's petition for leave to appeal, and on November 24, 2021, this court granted the Board's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). This court consolidated the appeals. This court also allowed the Forest Preserve District of Cook County to file an *amicus curiae* brief in support of

- 6 -

the County's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 17                                ANALYSIS

¶ 18        Section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)) permits a defendant to combine a section 2-615 (*id.* § 2-615) motion to dismiss based on a plaintiff's failure to state a cause of action with a section 2-619 (*id.* § 2-619) motion to dismiss based on certain defects or defenses. "A section 2-615 motion to dismiss tests the legal sufficiency of a complaint." *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.*

¶ 19        A motion to dismiss under section 2-619 (735 ILCS 5/2-619 (West 2018)) admits the sufficiency of the complaint but asserts a defense outside of the complaint that defeats it. *Patrick Engineering, Inc.*, 2012 IL 113148, ¶ 31. Section 2-619(a)(9) provides for an involuntary dismissal where the claim is barred by another affirmative matter avoiding the legal effect of or defeating the claim. 735 ILCS 5/2-619(a)(9) (West 2018). "This court's review of a dismissal under either section 2-615 or section 2-619 is *de novo*." *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 20        The pension protection clause of the Illinois Constitution guarantees that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. Pension benefits that flow directly from membership, including disability benefits, are protected. *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 25. "After the effective date of the Constitution, the 'contractual relationship' is governed by the actual terms of the Pension Code at the time the employee becomes

- 7 -

a member of the pension system." *Di Falco v. Board of Trustees of the Fireman's Pension Fund*, 122 Ill. 2d 22, 26 (1988).

¶ 21 As noted by the appellate court, this case presents an issue of statutory interpretation. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 509 (2007). The best indicator of legislative intent is the plain language of the statute itself. *Carmichael*, 2018 IL 122793, ¶ 35. "The statute should be evaluated as a whole, with each provision construed in connection with every other section." *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 552 (2009). When interpreting a statute, it is proper to consider "the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another." *Carmichael*, 2018 IL 122793, ¶ 35. "[W]here there is any question as to the legislative intent and clarity of the language of a pension statute, it must be liberally construed in favor of the rights of the pensioner." *Id.* ¶ 24.

¶ 22 "Although a court should first consider the language of the statute, a court must presume that the legislature, in enacting the statute, did not intend absurdity or injustice." *Wade*, 226 Ill. 2d at 510. "When a literal interpretation of a statutory term would lead to consequences that the legislature could not have contemplated and surely did not intend, this court will give the statutory language a reasonable interpretation." *Id.* "A statute should be interpreted so as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity." *Id.*

¶ 23 Article 9 of the Pension Code (40 ILCS 5/art. 9 (West 1998)) establishes a pension system for County employees, initiates the Benefit Fund, and establishes the Board. See *id.* § 9-101 ("In each county of more than 3,000,000 inhabitants a County Employees' and Officers' Annuity and Benefit Fund shall be created, set apart, maintained and administered, in the manner prescribed in this Article, for the benefit of the employees and officers herein designated and their beneficiaries."); see also *id.* § 9-107; *id.* § 9-185 (creating Board). Pursuant to the Pension Code, participants in the Benefit Fund may become eligible for two types of disability benefits: (1) duty disability benefits for employees who become disabled as a result of an on-duty injury (*id.* § 9-156) and (2) ordinary disability benefits for employees

who become disabled due to any other cause (*id.* § 9-157). The Board determines eligibility for both types of disability benefits and pays approved benefits to employees. *Id.* § 9-196 (board shall have exclusive original jurisdiction in all matters relating to the pension benefit fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds). The "[o]rdinary disability benefit shall be 50% of the employee's salary at the date of disability." *Id.* § 9-157.

¶ 24    The County is required to "contribute all amounts ordinarily contributed by it for annuity purposes for any employee receiving ordinary disability benefit as though he were in active discharge of his duties during such period of disability." *Id.* § 9-181. "Instead of all amounts ordinarily contributed by an employee and by the [C]ounty for age and service annuity and widow's annuity" based on the employee's salary at the date of disability, "the [C]ounty shall contribute sums equal to these amounts for any period during which the employee receives ordinary disability," and the County contribution "is deemed for annuity and refund purposes as amounts contributed by" the employee. *Id.* § 9-157. "The [C]ounty shall also contribute ½ of 1% salary deductions required as a contribution from the employee under [s]ection 9-133." *Id.*; see *id.* § 9-133.

¶ 25    Section 9-108(a) of the Code defines "employee," "contributor," or "participant" as "[a]ny employee of the county employed in any position in the classified civil service of the county." *Id.* § 9-108(a). Section 9-108(a) continues: "Any such employee in service on or after January 1, 1984, regardless of when he became an employee, shall be deemed a participant and contributor to the fund created by this Article and the employee shall be entitled to the benefits of this Article." *Id.*

¶ 26    Section 9-157 of the Pension Code provides for the ordinary disability benefit and states:

"An employee *** regardless of age on or after January 1, 1987, who becomes disabled after becoming a contributor to the fund as the result of any cause other than injury incurred in the performance of an act of duty is entitled to ordinary disability benefit during such disability, after the first 30 days thereof.

No employee who becomes disabled and whose disability commences during any period of absence from duty other than on paid vacation may receive ordinary disability benefit until he recovers from such disability and performs the duties of his position in the service for at least 15 consecutive days, Sundays and holidays excepted, after his recovery from such disability.

The benefit shall not be allowed unless application therefor is made while the disability exists, nor for any period of disability before 30 days before the application for such benefit is made. The foregoing limitations do not apply if the board finds from satisfactory evidence presented to it that there was reasonable cause for delay in filing such application within such periods of time.

The first payment shall be made not later than one month after the benefit is granted and each subsequent payment shall be made not later than one month after the last preceding payment.

\* \* \*

An employee who has withdrawn from service or was laid off for any reason, who is absent from service thereafter for 60 days or more who re-enters the service subsequent to such absence is not entitled to ordinary disability benefit unless he renders at least 6 months of service subsequent to the date of such last re-entry." *Id.* § 9-157.

¶ 27    Section 157 of the Pension Code identifies events that trigger the termination of ordinary disability benefits:

"The disability benefit prescribed herein shall cease when the first of the following dates shall occur and the employee, if still disabled, shall thereafter be entitled to such annuity as is otherwise provided in this Article:

(a) the date disability ceases.

(b) the date the disabled employee attains age 65 for disability commencing prior to January 1, 1979.

(c) the date the disabled employee attains 65 for disability commencing prior to attainment of age 60 in the service and after January 1, 1979.

(d) the date the disabled employee attains the age of 70 for disability commencing after attainment of age 60 in the service and after January 1, 1979.

(e) the date the payments of the benefit shall exceed in the aggregate, throughout the employee's service, a period equal to ¼ of the total service rendered prior to the date of disability but in no event more than 5 years. In computing such total service any period during which the employee received ordinary disability benefit and any period of absence from duty other than paid vacation shall be excluded." *Id.*

¶ 28    Section 9-159 of the Code lists three additional triggering events that terminate an ordinary disability benefit. *Id.* § 9-159. Section 9-159 provides that disability benefits are "not payable" if the disabled employee refuses to submit to a medical examination ordered by the Board; the disabled employee works for a tax-supported employer (receives any part of his salary or is employed by any public body supported in whole or in part by taxation); or the disabled employee, his widow, or his children receive workers' compensation benefits. *Id.* Section 9-158 of the Pension Code requires the disabled employee receiving ordinary disability payments to submit to annual medical examinations, requires that medical proof of the ordinary disability shall be furnished to the Board, and requires the Board to discontinue payment of the benefit when the disability ceases. *Id.* § 9-158.

¶ 29    Two other sections of article 9 establish mechanisms for disabled employees to convert their disability pensions into retirement pensions once their disability eligibility period has expired. Section 9-160 of the Pension Code, the "early annuity option," provides:

"An employee whose disability continues after he has received ordinary disability benefit for the maximum period of time prescribed by this Article, and who withdraws before age 60 while still so disabled, is entitled to receive the annuity provided from the total sum accumulated to his credit from employee contributions and county contributions to be computed as of his age on the date of withdrawal." *Id.* § 9-160.

Section 9-174, the "credit purchase option," also provides that disabled employees whose credit for ordinary benefit purposes has expired and who continue to be

disabled have the right to continue contributing to the pension fund at the "current contribution rate" for a period not to exceed 12 months and to receive annuity credit for those periods so paid. *Id.* § 9-174.

¶ 30    As noted by the appellate court, these latter sections illustrate that, under most circumstances, a permanently disabled employee may enjoy an uninterrupted flow of benefits from the time his application for the ordinary disability benefit is granted until conversion to a disability pension or the employee's death. In this case, the Board halted O'Connell's benefit once the County terminated his employment, before his ordinary disability benefit period expired and thus before he qualified for the early annuity option or the credit purchase option. O'Connell also lost approximately two years of contributions to the Benefit Fund, which would have increased his retirement annuity. O'Connell argues that these benefits are rendered illusory if the County can discharge a disabled employee and thereby end his ordinary disability benefit before he has received it "for the maximum period of time" allowed by article 9 of the Pension Code. *Id.* § 9-160; see also *id.* § 9-174.

¶ 31    The Board and the County argue that, once the County terminated O'Connell's employment, he became a "former employee" not entitled to the ordinary disability benefit pursuant to section 9-157 of the Pension Code. The Board argues that article 9 clearly provides the ordinary disability benefit only for a current employee (*id.* § 9-157), unable to perform the duties of his position (*id.* § 9-113), and that once the County terminated O'Connell's employment, he was no longer entitled to the ordinary disability benefit because he was no longer a current employee unable to perform his duties. Thus, the Board argues, once the County terminated O'Connell's employment, he was no longer eligible to receive the ordinary disability benefit.

¶ 32    Likewise, the County argues that article 9 requires it to contribute amounts for annuity purposes only for a current employee receiving the ordinary disability benefit as though he were in active discharge of his duties. *Id.* § 9-181 ("The county shall contribute all amounts ordinarily contributed by it for annuity purposes for any employee receiving ordinary disability benefit as though he were in active discharge of his duties during such period of disability."). The County further argues that, because it is required to make pension contributions for disabled individuals only when they are "receiving [the] ordinary disability benefit" (*id.*),

O'Connell's ineligibility for the ordinary disability benefit relieves the County of any obligation to make contributions on his behalf and O'Connell's claims against the County fail as a matter of law.

¶ 33    O'Connell counters that the language of section 9-157 of the Pension Code is inclusive enough to encompass former employees. O'Connell argues that article 9 uses the term "employee" to refer to both current and former employees.

¶ 34    The parties' arguments as to whether O'Connell, as a former employee, is entitled to the ordinary disability benefit he was receiving, upon termination of his employment, are misguided. The plain language of section 9-157 of the Pension Code entitles a disabled employee to the ordinary disability benefit, after the first 30 days of his disability, if he is an employee and a contributor to the fund, when he becomes disabled. *Id.* § 9-157. The language is reinforced by section 9-157's provision that, if the employee becomes disabled during a period of absence of duty without pay, he may receive the ordinary disability benefit once he recovers from such disability and performs the duties of his position in the service for at least 15 consecutive days—again, highlighting that the operative date to determine whether the applicant is an "employee" is the date of disability and application and that an employee on a leave of absence from duty without pay is not entitled to an ordinary disability benefit until he is again in service, *i.e.*, an employee and contributor to the fund. *Id.* Thus, the operative time to determine whether an ordinary disability applicant is an "employee" and "contributor to the fund" is at the time of initial application.

¶ 35    Once the Board grants the employee the ordinary disability benefit, section 9-157 then enumerates triggering events, which do not include termination of employment, that halt the ordinary disability benefit. *Id.* Once allowed, the ordinary disability benefit continues, until the disability ceases, the disabled employee reaches termination age, or the employee's years-of-service credit has expired (one-quarter of the total service rendered prior to the date of disability but in no event more than five years). *Id.*; see also *id.* § 9-159 (benefit not payable if employee refuses to submit to medical exam or receives his salary or workers' compensation benefits).

¶ 36    The applicant's status as employee and contributor, along with his disability, is determined at the time of his initial application. *Iwanski v. Streamwood Police*

*Pension Board*, 232 Ill. App. 3d 180, 191 (1992) (because police officer, who filed application for disability pension prior to discharge but also prior to hearings on application, was nevertheless employed when he applied for disability pension, subsequent discharge did not bar entitlement to disability pension); *Greenan v. Board of Trustees of the Police Pension Fund*, 213 Ill. App. 3d 179, 186 (1991) (disabled police officer's resignation did not sever his right to a line of duty disability pension where he was a commissioned police officer at the time of his knee injury, at the time of his application for disability pension benefits, and at the time of the hearings on his application). Pursuant to the Pension Code's annual medical examination requirement (40 ILCS 5/9-158 (West 1998); *id.* § 9-159(a)), the applicant's disability status is revisited, but his employment status is not. As noted by the County, the County and the Board are separate entities with separate responsibilities. The Pension Code's requirement that O'Connell submit to annual examinations does not arise from his employment status but rather from the Board's jurisdiction over one receiving disability benefits. Nothing in article 9 of the Pension Code provides that once the Board grants the ordinary disability benefit to the employee, it must cease payments based on the employer's termination of his employment.

¶ 37     Accordingly, section 9-157's plain language provides that O'Connell became entitled to the ordinary disability benefit in 2017, when he initially applied, as an employee who became disabled after becoming a contributor to the fund. See *id.* § 9-157. O'Connell, who became disabled after becoming a contributor to the fund, was required to apply for the benefit "after the first 30 days" "while the disability exist[ed]," and once granted by the Board, the Board's first payment of the ordinary disability benefit occurred "not later than one month after the benefit [wa]s granted" and each month thereafter. *Id.* The parties do not dispute that O'Connell was properly granted the ordinary disability benefit in 2017, when he applied upon disability, and that no terminating event, listed in section 9-156 of the Pension Code (*id.* § 9-156), has occurred since.

¶ 38     This statutory construction is consistent with our previous caselaw. In *Di Falco*, 122 Ill. 2d at 24, this court determined whether a probationary firefighter, an applicant for a duty-related disability pension, was entitled under article 4 of the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, ¶ 4-101 *et seq.*) to a disability pension when the firefighter first applied for the pension a year after his discharge. This

court concluded that "the term 'fireman' as used in section 4-110 [providing the duty-disability pension] is operative both at the time of impairment and application." *Di Falco*, 122 Ill. 2d at 30. In other words, this court held that "[t]o receive a disability pension under section 4-110, a fire fighter must not have been discharged *prior to application therefor*." (Emphasis added.) *Id.*

¶ 39    In *Di Falco*, this court upheld the view that the Pension Code's statutory scheme requires that an individual must be employed as a firefighter *at the time of application* for disability pension benefits. *Id.* at 30-31. This court noted that article 4 of the Pension Code indicated that, "in order *to begin* receiving a disability pension, fire fighters must not have been discharged." (Emphasis added.) *Id.* at 29. This court concluded that "[t]o allow fire fighters who have been discharged *to apply* for disability pensions under section 4-110 would disrupt the pension scheme established by the legislature." (Emphasis added.) *Id.* at 30. This court held that it was the "plaintiff's failure to meet a condition precedent to his right to a pension— that is, to be a member of the fire service without termination *at the time he applied* for his pension—which prevented [the] plaintiff from receiving a pension." (Emphasis added.) *Id.* at 30-31. This court thus concluded that the plaintiff's application for a pension was properly dismissed because "fire fighters applying for a duty-related pension under section 4-110 of the Illinois Pension Code must still be employed as fire fighters *at the time of application*." (Emphasis added.) *Id.* at 33.

¶ 40    O'Connell thus maintained standing to seek relief for reinstatement of his ordinary disability benefit by the Board and of contributions by the County. See *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 254 (1985) (standing requires injury in fact to a legally recognized interest); see also *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93 (1988) (injury for standing must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the requested relief). O'Connell further stated a sufficient cause of action for declaratory judgment (see *The Carle Foundation v. Cunningham Township*, 2017 IL 120427, ¶ 26 (declaratory judgment action involves a plaintiff with a legal tangible interest, a defendant with an opposing interest, and an actual controversy between the parties) and a valid complaint for *mandamus* (see *Novola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997) (valid complaint for *mandamus* "must allege facts

which establish a clear right to the relief requested, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ").

¶ 41                                    CONCLUSION

¶ 42        For the foregoing reasons, we affirm the judgment of the appellate court, reverse the judgment of the circuit court, and remand the cause for further proceedings.


¶ 43        Appellate court judgment affirmed.

¶ 44        Circuit court judgment reversed.

¶ 45        Cause remanded.