**2023 IL 127547**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 127547)

RITA LINTZERIS *et al.*, Appellants, v. THE CITY OF CHICAGO, Appellee.

*Opinion filed January 20, 2023.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Neville, Overstreet, and Holder White concurred in the judgment and opinion.

Justices Cunningham, Rochford, and O'Brien took no part in the decision.

## OPINION

¶ 1 Plaintiffs Rita Lintzeris, William Moraitis, Zaron Jossel, and Clarence Daniels brought an action for declaratory, injunctive, and monetary relief, on behalf of themselves and others similarly situated, against the City of Chicago (City). Plaintiffs challenged the City's authority to enact an ordinance imposing administrative penalties on the owners of impounded vehicles (Chicago Municipal

Code § 2-14-132 (amended Nov. 16, 2016)). Plaintiffs contended that the ordinance is an invalid exercise of the City's home rule authority because it is preempted by section 11-208.7 of the Illinois Vehicle Code (625 ILCS 5/11-208.7 (West 2016)). The Cook County circuit court dismissed the complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2016)), and the appellate court affirmed. 2021 IL App (1st) 192423-U. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3                            The Impoundment Ordinance

¶ 4        In 1998, the City enacted an ordinance setting forth the applicable procedures, penalties, and fees that apply to vehicle owners when their vehicle has been impounded because of its use in certain enumerated municipal code offenses. See Chicago Municipal Code § 2-14-132 (added Apr. 29, 1998). Under the ordinance, as generally relevant here, within 15 days of the impoundment, an owner may request a preliminary hearing, at which an administrative law officer determines within 48 hours whether there is probable cause to believe the owner's vehicle was used in one of the enumerated offenses. Chicago Municipal Code § 2-14-132(a)(1) (amended Nov. 16, 2016). If the administrative law officer finds probable cause, the vehicle owner may regain possession of the vehicle by paying the administrative penalty applicable to the municipal code offense, plus towing and storage fees, as well as any outstanding debt arising from other vehicle offenses. *Id.* § 2-14-132(a)(1)-(2). If probable cause is lacking, the vehicle is returned to the owner, and no penalty or fees are owed. *Id.* § 2-14-132(a)(3).

¶ 5        Additionally, the owner of the vehicle has a right to request a hearing to challenge the impoundment. If the administrative law officer finds by a preponderance of the evidence that the vehicle was used in the offense, the owner is liable for the administrative penalty applicable to that offense, plus towing and storage fees. *Id.* § 2-14-132(b)(3)(A). If the administrative law officer does not find by a preponderance of the evidence that the owner's vehicle was involved, the vehicle is returned, and the owner receives a refund of any penalty and fees paid. *Id.* § 2-14-132(b)(3)(B). If the owner does not request a hearing or fails to appear at the hearing, the administrative law officer enters a default order imposing the

applicable administrative penalty, plus towing and storage fees. *Id.* § 2-14-132(b)(4). An administrative penalty constitutes a debt due to the City and may be enforced as a judgment in accordance with applicable law. *Id.* § 2-14-132(c).

¶ 6                              The Vehicle Code

¶ 7      The Vehicle Code covers vehicle regulation in the state, including traffic regulation in chapter 11, titled "Rules of the Road." 625 ILCS 5/ch. 11 (West 2016). Article II of chapter 11 concerns obedience to and the effect of traffic laws. *Id.* ch. 11, art. II. Section 11-207 provides that the provisions in chapter 11 are to be uniform throughout the State; while local authorities can adopt additional traffic regulations, "no local authority shall enact or enforce any ordinance rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein." *Id.* § 11-207. The Vehicle Code further provides within chapter 11 that home rule units, such as the City, cannot adopt inconsistent local police regulations, subject to exceptions not at issue in this case. *Id.* § 11-208.2.

¶ 8      In 2012, the General Assembly amended the Vehicle Code to add a provision to chapter 11, article II, governing administrative fees and procedures for the release of impounded vehicles. See Pub. Act 97-109, § 5 (eff. Jan. 1, 2012) (adding 625 ILCS 5/11-208.7). That section authorizes counties and municipalities to "provide by ordinance procedures for the release of properly impounded vehicles" and to impose "a reasonable administrative fee related to [a county's or municipality's] administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle." 625 ILCS 5/11-208.7(a) (West 2016).

¶ 9                              Procedural History

¶ 10     In 2017, plaintiffs brought an action on behalf of themselves and a purported class of vehicle owners who either paid administrative penalties or had default judgments entered against them for such penalties under the impoundment ordinance from 2012 to the time of the complaint. Plaintiff Lintzeris alleged that her son borrowed her vehicle and was arrested for driving while intoxicated and possessing unlawful drugs. Her vehicle was impounded, and she paid an

administrative penalty, as well as fees for towing and storage. Plaintiff Moraitis alleged that his son was arrested for driving with a suspended license. After a full hearing, an administrative law officer upheld the impoundment of his vehicle and ordered that he pay an administrative penalty, storage costs, and a towing fee. Moraitis did not allege that he paid the penalty or fees. Plaintiff Jossel alleged that his vehicle was impounded after he was arrested for possessing a controlled substance. He paid an administrative penalty, as well as towing and storage fees. Plaintiff Daniels alleged that his vehicle was impounded after he was arrested for driving while intoxicated. He alleged that he was assessed an administrative penalty and fees, which he did not pay.

¶ 11        Plaintiffs challenged the impoundment ordinance, alleging that the Vehicle Code prohibits the City from imposing the administrative penalties in connection with a vehicle's impoundment. Specifically, plaintiffs alleged that section 11-208.2 expressly limits the City's authority to adopt local police regulations that are inconsistent with chapter 11 and that section 11-208.7 allows for only towing, storage, and other reasonable administrative costs. Therefore, plaintiffs alleged that the impoundment ordinance's imposition of administrative penalties is inconsistent with section 11-208.7 and thereby unenforceable.

¶ 12        In count I of the complaint, plaintiffs sought a declaration that the City is not authorized to impose the penalties. In count II, plaintiffs sought an injunction barring the City from imposing any further administrative penalties. In counts III and IV, plaintiffs asserted claims for unjust enrichment and conversion and sought a refund of administrative penalties collected since 2012, as well as proceeds from the sale of impounded vehicles.

¶ 13        The City then filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2016). The City argued that plaintiffs' claims failed as a matter of law because the ordinance is not inconsistent with section 11-208.7 and because section 11-208.7 does not apply to home rule units. After briefing and a hearing, the circuit court dismissed the complaint, finding that prior to the enactment of section 11-208.7 the City had home rule authority to impose the penalties and that adding section 11-208.7 did not preempt the City's home rule authority to impose the penalties because the statute's authorization to impose fees did not include a prohibition of penalties. As an

- 4 -

alternative basis, the court determined that section 11-208.7 did not apply to home rule units.

¶ 14    The appellate court affirmed the judgment of the circuit court. 2021 IL App (1st) 192423-U. The court found that "nowhere in [section 11-208.7] is there an explicit limitation on the power of a home rule unit to charge an administrative penalty or fine for the underlying violation that led to the impoundment of the vehicle." *Id.* ¶ 49. Accordingly, the court held that "[t]he impoundment ordinance is not inconsistent with the Vehicle Code and operates concurrently with the Vehicle Code." *Id.* ¶ 50.

¶ 15    We subsequently allowed plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We also allowed the Illinois Counties Risk Management Trust to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16                                    ANALYSIS

¶ 17    The central issue in this appeal is whether the City's ordinance, imposing administrative penalties on owners of vehicles impounded for certain municipal violations, is a valid exercise of the City's home rule power. Plaintiffs contend that the statutory provisions of the Vehicle Code and the limitations on home rule authority in the Vehicle Code foreclose the City's imposition of administrative penalties, thus rendering the ordinance unenforceable.

¶ 18    The appeal comes to this court from the circuit court's dismissal of plaintiffs' complaint under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2016). A motion to dismiss under that section tests the legal sufficiency of the complaint based on defects apparent on its face. *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 18. The essential question presented is whether the allegations of the complaint, taken as true and construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Id.* Our review of an order granting a section 2-615 motion is *de novo*. *Id.* ¶ 19.

¶ 19                        The City's Home Rule Authority

¶ 20        The City is a home rule unit. See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505. As such, our analysis begins with the scope of its home rule authority. The 1970 Illinois Constitution bestows broad authority on home rule units. *Palm*, 2013 IL 110505, ¶ 30 (citing Ill. Const. 1970, art. VII, § 6(m)); *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992). As expressed in article VII, section 6(a), of the Illinois Constitution:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

¶ 21        Thus, under section 6(a), the City, as a home rule unit, draws its power to regulate for the protection of the public safety directly from the constitution. This power does not depend on a grant of authority by the General Assembly, as was the design prior to the 1970 constitution. *City of Chicago v. Roman*, 184 Ill. 2d 504, 512-13 (1998). Section 6 further provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m). This broad power vested in home rule units is premised on the understanding that problems affecting units of local government and their residents should be addressed with solutions tailored to meet those local needs. *Palm*, 2013 IL 110505, ¶ 29.

¶ 22        Although the constitutional power of home rule units is deliberately broad, the General Assembly may preempt the exercise of a home rule unit's powers by expressly limiting that authority. As provided under article VII, section 6(h), the General Assembly "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). We have previously explained that, if the legislature intends to limit or deny the exercise of a home rule unit's powers, it must provide an express statement to that effect. *Palm*, 2013 IL 110505, ¶ 31; *Roman*, 184 Ill. 2d at 520. The General Assembly has codified this principle in section 7 of the Statute on Statutes (5 ILCS 70/7 (West 2016)) and in enacting section 5 of the Home Rule Note Act (25 ILCS 75/5 (West 2016)).

¶ 23    If there is no express limitation or denial of home rule authority, a municipal ordinance and a state statute may operate concurrently as provided in article VII, section 6(i): "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i). These constitutional provisions reflect an intention to minimize limitations on home rule powers, and by constitutional design "courts should step in to compensate for legislative inaction or oversight only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies." (Emphasis and internal quotation marks omitted.) *Palm*, 2013 IL 110505, ¶ 34.

¶ 24                   Vehicle Code's Impact on the City's Home Rule Authority

¶ 25    With an understanding of home rule authority and its constitutional underpinnings, we now consider plaintiffs' contention that several Vehicle Code provisions collectively preempt the City's home rule authority to impose the penalties at issue here, which they assert are inconsistent with the Vehicle Code. The question of preemption is a question of law and requires that we construe the Vehicle Code and the ordinance; our review is *de novo*. *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 11.

¶ 26    The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning. *O'Connell*, 2022 IL 127527, ¶ 21. "Where the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express." *Sigcho-Lopez v. Illinois State Board of Elections*, 2022 IL 127253, ¶ 27. Additionally, we must consider the words and phrases in the statute in view of other relevant statutory provisions and not in isolation. *Id.* ¶ 28.

¶ 27    We begin with the statutory provisions of the Vehicle Code central to plaintiffs' argument. Section 11-207 of the Code provides, in pertinent part:

   "The provisions of this Chapter shall be applicable and uniform throughout this State and in all political subdivisions and municipalities therein, and no local

- 7 -

authority shall enact or enforce any ordinance rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Chapter ***." 625 ILCS 5/11-207 (West 2016).

Thus, the General Assembly has plainly provided for the uniformity of the provisions of chapter 11, and local authorities may not adopt an ordinance that conflicts with those provisions. See also *id.* § 11-208.1 ("The provisions of this Chapter of this Act *** shall be applicable and uniformly applied and enforced throughout this State ***.").

¶ 28        Further, section 11-208.2 is an express limitation on the power of home rule units. Specifically, section 11-208.2 provides that "[t]he provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith except pursuant to Sections 11-208, 11-209, 11-1005.1, 11-1412.1, and 11-1412.2 of this Chapter of this Act." *Id.* § 11-208.2.

¶ 29        Accordingly, although the General Assembly has not entirely preempted the field of vehicle regulation, section 11-208.2 limits home rule units' authority to enact ordinances that are not inconsistent with the provisions of chapter 11 and that do not upset the uniform enforcement of those provisions. See *Roman*, 184 Ill. 2d at 517-18 (generally recognizing section 11-208.2 as a limitation on home rule units).

¶ 30        Prior to 2012, there were no regulations in chapter 11 relating to the impoundment of vehicles and none directed at the owners of impounded vehicles. Therefore, between 1998 and 2012 there could be no inconsistency or lack of uniformity between the impound ordinance and chapter 11 of the Vehicle Code. See *id.* at 514-15 ("different [home rule units] which perceive a problem differently may adopt different measures to address the problem, provided that the legislature has taken no affirmative steps to circumscribe the measures that may be taken and that the measures taken are reasonable" (internal quotation marks omitted)). We also note that the City's authority to impose administrative penalties was found to be otherwise constitutionally sound. See, *e.g.*, *McGrath v. City of Kankakee*, 2016 IL App (3d) 140523, ¶¶ 18-25 (holding a similar ordinance did not violate due process); *Sloper v. City of Chicago, Department of Administrative*

*Hearings*, 2014 IL App (1st) 140712, ¶¶ 25-28 (holding that the administrative penalties under the ordinance related to a particular code violation were not constitutionally prohibited as excessive fines).

¶ 31 Plaintiffs maintain that the 2012 amendment to the Vehicle Code in section 11-208.7 preempts the City's imposition of administrative penalties when viewed with the limitations on home rule authority in the Code. Specifically, plaintiffs argue that section 11-208.7 is inconsistent with the ordinance, because remedial costs are inconsistent with punitive penalties, and that nothing in the text authorizes penalties. Section 11-208.7(a) provides, in pertinent part, that

> "[a]ny county or municipality may, consistent with this Section, provide by ordinance procedures for the release of properly impounded vehicles and for the imposition of a reasonable administrative fee related to its administrative and processing costs associated with the investigation, arrest, and detention of an offender, or the removal, impoundment, storage, and release of the vehicle. The administrative fee imposed by the county or municipality may be in addition to any fees charged for the towing and storage of an impounded vehicle." 625 ILCS 5/11-208.7(a) (West 2016).

Further, section 11-208.7(b) limits the fees that may be imposed to certain enumerated underlying violations. *Id.* § 11-208.7(b). Moreover, any such fee "shall be in addition to (i) any other penalties that may be assessed by a court of law for the underlying violations; and (ii) any towing or storage fees, or both, charged by the towing company." *Id.* § 11-208.7(c)(2).

¶ 32 Notably, in 2016, the legislature amended section 11-208.7, adding subsection (j) directed at home rule units. See Pub. Act 99-848, § 105 (eff. Aug. 19, 2016) (adding 625 ILCS 5/11-208.7(j)). That subsection states that the fee limitations provided in subsection (b) do not apply to home rule units that tow a vehicle on a public way if a circumstance requires the towing or if the vehicle is towed due to a violation of a statute or local ordinance and the home rule unit owns and operates a towing facility and owns or operates tow trucks. 625 ILCS 5/11-208.7(j) (West 2016).

¶ 33 The plain language of the statute provides that counties and municipalities "may" choose to charge "a reasonable administrative fee" to cover various costs

associated with an impoundment. For an ordinance to be consistent with the authorization of fees, the fees imposed must be reasonable and must relate to specified administrative and processing costs. The question then, is whether the statutory authorization to charge a reasonable fee for various costs related to an impoundment of a vehicle is inconsistent with the City's imposition of administrative penalties related to the impoundment.

¶ 34    We find that a home rule unit's imposition of penalties does not interfere with and is not inconsistent with the State's efforts to allow municipalities to recoup the remedial costs incurred by an impoundment. Rather, the imposition of a penalty is compatible with the authorization of fees in section 11-208.7. A fee is imposed to recoup the costs incurred in providing a service, while a fine is intended to be punitive or act as a deterrent. *People v. Jones*, 223 Ill. 2d 569, 581-82 (2006); *Carter v. City of Alton*, 2015 IL App (5th) 130544, ¶ 37. There is no express language of prohibition or exclusion in the statute stating that only fees may be charged. The statute is silent with respect to the imposition of administrative penalties. Moreover, nothing in the statute expressly negates the authority to impose administrative penalties. The imposition of fines and fees are not mutually repugnant. In other words, there is no contradiction in implementing the statute and the ordinance.

¶ 35    Given the plain language of the statute and considering that the powers and functions of home rule units are to be construed liberally (Ill. Const. 1970, art. VII, § 6(m)), we hold that section 11-208.7, when viewed in consideration of the rest of chapter 11, does not preclude the City from imposing an administrative penalty. As a result, the ordinance is not preempted by the General Assembly's subsequent passage of section 11-208.7.

¶ 36    The cases cited by plaintiffs in support of their argument regarding inconsistency and lack of uniformity are distinguishable. For example, in *People ex rel. Ryan v. Village of Hanover Park*, 311 Ill. App. 3d 515, 518-19 (1999), various villages had ordinances that "allow[ed] the traffic offender to pay a settlement fee in lieu of court adjudication" and "eliminate[d] the possibility of the offender receiving a conviction for the offense and having the conviction reported to the Secretary of State." Under the Vehicle Code, a traffic offense is adjudicated in circuit court, and if a driver is convicted, the clerk of the court reports the

conviction to the Secretary of State, who maintains records of repeat offenders and may suspend or revoke their driver's licenses. *Id.* at 518.

¶ 37 The appellate court found that the ordinances gave "the offender an opportunity to circumvent the potential consequences of committing the offense, namely, a chance to avoid an adjudication in the circuit court, a finding of guilty, and a guilty finding being reported to the Secretary of State." *Id.* at 527. It further found they "derail[ed] one of the Secretary of State's most important duties—monitoring traffic offenders through reports of convictions." *Id.* By interfering with the Secretary of State's exclusive responsibility to suspend or revoke driving privileges, the ordinances "undermine[d] the policies set forth by the legislature." *Id.* at 528. Therefore, the court concluded that the ordinances were unenforceable. *Id.*

¶ 38 Unlike the village ordinances, the City's addition of penalties here does not circumvent the authorization of fees, create an obstacle to charging fees, or derail any state function. If the General Assembly wishes to deny or restrict the City's home rule authority to impose an administrative penalty, it may enact language expressly providing for that limitation.

¶ 39                    Whether the Subject Pertains to the City's
                              "Government and Affairs"

¶ 40 For the first time in its opening brief in this court, plaintiffs argue that the ordinance does not pertain to the City's local government and affairs as required by article VII, section 6(a), of the constitution and, therefore, falls outside the grant of home rule authority. The City contends that the issue is forfeited. We agree.

¶ 41 Plaintiffs never asserted this theory in their complaint. The issue raised therein was legislative preemption of the City's home rule authority based on the provisions of the Vehicle Code. Allowing a party to change its theory of a case on appeal weakens the adversarial process and likely prejudices the opposing party. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Furthermore, even broadly construed, the issue was never raised in response to the City's motion to dismiss, in the appellate court, or in plaintiffs' petition for leave to appeal. Thus, the trial and appellate courts never had an opportunity to consider and rule upon

this question, and the City's first opportunity to respond to this argument is in its response brief in this court.

¶ 42    We have held on numerous occasions that the failure to raise an issue in either the trial or appellate court may result in forfeiture. See, *e.g.*, *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301 (2006). We have further held that the failure to raise an issue in a petition for leave to appeal may also result in forfeiture. See, *e.g.*, *People v. Fitzpatrick*, 2013 IL 113449, ¶ 26. Whether to review a forfeited issue under these circumstances is within this court's discretion. *In re Rolandis G.*, 232 Ill. 2d 13, 37 (2008). When an issue is not specifically raised in a party's petition for leave to appeal but it is " 'inextricably intertwined' " with other matters properly before the court, review is appropriate. *Id.* (quoting *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002)). If, however, the forfeited issue is not inextricably intertwined with the issues properly before the court, the forfeiture rule should be given effect. *Id.*

¶ 43    We do not find the issues articulated to be inextricably intertwined. As we have explained, a home rule unit may act concurrently with the State if the subject being regulated pertains to its local government and affairs and if the legislature has not expressly preempted its home rule authority. *Palm*, 2013 IL 110505, ¶¶ 29-31. Here, plaintiffs' theory of the case regarding legislative preemption presupposes that the subject of the ordinance otherwise pertained to the City's local government and affairs. Thus, rather than being inextricably intertwined, it is merely a separate, alternative argument.

¶ 44    Additionally, both in the appellate court and in this court, plaintiffs acknowledged that the legislature only began regulating issues related to impoundments in 2012. Prior to the enactment of section 11-208.7, the Vehicle Code did not prevent home rule units from adopting local impoundment regulations, including the City's impoundment ordinance. Plaintiffs' acknowledgement is a tacit agreement that until the enactment of section 11-208.7, home rule units had constitutional authority to regulate in this area.

¶ 45    Nevertheless, we have relaxed the forfeiture rules if the issue is one of law, the issue is fully briefed and argued by the parties, and the public interest favors considering the issue. *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 73 (2002). Even considering the issue, we find plaintiffs' argument lacks merit. As set

forth in *Roman*, section (6)(d)(2) of article VII of the constitution (Ill. Const. 1970, art. VII, § 6(d)(2)) specifically allows home rule units to impose fines and jail sentences for nonfelonies. *Roman*, 184 Ill. 2d at 513-14. Additionally, the City's imposition of a penalty has been recognized as a legitimate deterrence tool related to its interest in the safety and welfare of its residents. See *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999) (the fine serves the "purpose of deterring owners from allowing their vehicles to be used for prohibited purposes"). In *Towers*, although not expressly addressing the concurrent exercise of home rule authority, the court explained that, by facilitating illegal activity, the plaintiffs had contributed, however unwittingly, to the spread of drugs in their community. *Id.* at 625. The court found that this was a major concern of a city responsible for the safety and health of its people and a particular concern for a city the size of Chicago and, thus, the City was on solid ground in creating an additional layer of deterrence against this type of prohibited activity. *Id.*

¶ 46    While the history of the Vehicle Code evinces a statewide role in the regulation of vehicles generally, nothing in the Vehicle Code remotely suggests that the General Assembly sought to entirely preempt a home rule unit in the field of vehicle regulation, much less with respect to the specific problem addressed by the ordinance. See, *e.g.*, 625 ILCS 5/11-207 (West 2016) (expressly acknowledging the authority of municipalities to adopt additional traffic regulations not in conflict with chapter 11). Moreover, comprehensive state regulation cannot be the basis to "render an area entirely outside of local control under section 6(a)." *Palm*, 2013 IL 110505, ¶ 73 (Thomas, J., specially concurring).

¶ 47    Rather, as here, a statutory provision that partially preempts home rule authority presupposes that local governments otherwise have concurrent authority in the area. See *Illinois Road & Transportation Builders Ass'n v. County of Cook*, 2022 IL 127126, ¶ 48. By enacting section 11-208.2 of the Vehicle Code, the General Assembly recognized that home rule units had concurrent authority under section 6(i) but chose to limit that authority in chapter 11 to those police regulations that are not inconsistent with its provisions. If vehicle regulation under chapter 11 did not pertain to a home rule unit's government and affairs, then the limitation in section 11-208.2 would be unnecessary. Accordingly, for all these reasons, we find that plaintiffs' new assertion lacks merit.

- 13 -

¶ 48                                    Double Jeopardy

¶ 49         Lastly, plaintiffs raise the "parameters of double jeopardy" to demonstrate the
        "General Assembly's intent to proscribe administrative penalties." The City argues
        this issue has also been forfeited. A violation of the double jeopardy clause was
        never raised in plaintiffs' complaint. And contrary to plaintiffs' assertion that the
        double jeopardy claim was raised in their response to the motion to dismiss, the
        record reflects that the issue raised was that the ordinance conflicted with section
        11-208.7. Neither the circuit court nor appellate court considered whether the
        impoundment ordinance violated double jeopardy. We have held that, in a civil
        case, a party's failure to challenge the constitutionality of a statute in the circuit
        court normally forfeits that challenge on appeal. *Forest Preserve District of
        Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 27.
        Yet, to the extent the issue is one of law, is fully briefed, and the public interest
        favors considering it, we consider the merits and find the penalty does not violate
        double jeopardy.

¶ 50         The double jeopardy clause of the United States Constitution provides that no
        "person [shall] be subject for the same offence to be twice put in jeopardy of life or
        limb." U.S. Const., amend. V. "The Clause protects only against the imposition of
        multiple *criminal* punishments for the same offense [citations] and then only when
        such occurs in successive proceedings [citation]." *Hudson v. United States*, 522
        U.S. 93, 99 (1997). In determining whether a particular punishment is criminal or
        civil, we look to whether there is an express or implied intent in the legislation to
        establish a civil or criminal penalty. *Id.* Here, the ordinance by its plain language
        provides for an "administrative penalty," imposed by an administrative agency. See
        Chicago Municipal Code § 2-14-132 (amended Nov. 16, 2016). An ordinance
        administered by an administrative agency is presumptively civil, as it does not
        provide for the same procedural safeguards that criminal proceedings do. See
        *Turner v. Glickman*, 207 F.3d 419, 429 (7th Cir. 2000) (statute administered by an
        agency is presumptively civil because agency enforcement mechanisms do not
        contain the same procedural safeguards that criminal proceedings do).

¶ 51         Even if the legislation is intended as a civil penalty, we then consider "whether
        the statutory scheme [is] so punitive either in purpose or effect" "as to transfor[m]
        what was clearly intended as a civil remedy into a criminal penalty." (Internal

                                          - 14 -

quotation marks omitted.) *Hudson*, 522 U.S. at 99. Plaintiffs must establish the "clearest proof" that the penalties are "so punitive in form and effect as to render them criminal." (Internal quotation marks omitted.) *Id.* at 104. Several factors have been considered as "useful guideposts":

> "(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." (Internal quotation marks omitted). *Id.* at 99-100.

¶ 52        Plaintiffs argue the first five factors present clear proof that the penalties are criminal. We disagree. With respect to the first and second factors, the penalties do not involve an affirmative disability or restraint as those terms are generally understood. The sanction is a monetary penalty, and the penalty imposed is "certainly nothing approaching the 'infamous punishment' of imprisonment." (Internal quotation marks omitted.) *Id.* at 104. Additionally, monetary penalties have not historically been considered as punishment. *Id.* With respect to the third factor, the penalty does not come into play only on a finding of *scienter*. Rather, the penalty imposed does not require the vehicle owner's knowledge of the vehicle's use in the underlying offense, only that the offense occurred. See Chicago Municipal Code § 2-14-132(b)(3)(A) (amended Nov. 16, 2016).

¶ 53        With respect to the fourth factor, while the ordinance indeed aims to deter conduct, civil penalties may have some deterrent effect without being rendered criminal in nature, and that alone is not sufficient to transform the penalty into a criminal sanction. *Hudson*, 522 U.S. at 105. As to the fifth factor, that some conduct triggering the penalties under the City's ordinance may be criminal in nature is also alone insufficient to transform the monetary penalties into criminal penalties. See *id.* Accordingly, plaintiffs have not met the high burden to show by the clearest proof that the administrative penalty imposed under the ordinance is so punitive in purpose or effect to transform it into a criminal penalty. Consequently, plaintiffs

cannot establish that the penalty violates the double jeopardy clause.

¶ 54                                    CONCLUSION

¶ 55        In sum, we hold that the motion to dismiss plaintiffs' complaint was properly granted. The City, as a home rule unit, was not preempted by the Vehicle Code from imposing an administrative penalty in its impoundment ordinance; the imposition of the penalty is a valid exercise of its home rule authority and does not constitute a criminal penalty for purposes of double jeopardy. Accordingly, we affirm the judgment of the appellate court, which affirmed the circuit court's dismissal of plaintiffs' complaint.

¶ 56        Affirmed.

¶ 57        JUSTICES CUNNINGHAM, ROCHFORD, and O'BRIEN took no part in the consideration or decision of this case.