2025 IL App (1st) 241457-U

SIXTH DIVISION

September 12, 2025

No. 1-24-1457

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| FCA CONSULTANTS, Relator, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | Nos.  23L1021,  23L1031, |
| v. | ) | 23L1033, 23L1036, 23L1053, |
| | ) | 23L1020, 23L1036, 23L1039, |
| CITY OF CHICAGO, | ) | 23L1042, 23L1049, 23L1050, |
| | ) | 23L1051, 23L1054, 23L1034, |
| Plaintiff-Appellee, and | ) | 23L1035, 23L1037, 23L1038, |
| | ) | 23L1040, 23L1043 |
| PAYCHEX, *et. al.,* | ) | |
| | ) | Honorable |
| Defendants. | ) | Daniel P. Duffy, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Hyman and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1   *Held:*   We affirm where (1) the City's exercise of its home rule authority did not preempt the Illinois Constitution or Illinois common law; (2) the CFCO supersedes the IFCA

to the extent the enactments conflict with each other; and (3) Relator's claim was barred because it concerned the application, interpretation, or enforcement of the City's tax ordinance.

¶ 2     Plaintiff-appellant FCA Consultants ("Relator") brought an action for declaratory relief against the City of Chicago ("the City"). Relator argued the Chicago False Claims Ordinance was an unconstitutional exercise of the City's home rule authority because it preempted the Illinois Constitution and Illinois common law. The circuit court dismissed the complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615) (West 2016)). For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff-appellant FCA Consultants identified twenty-five vendors, including PAYCHEX, INC., BENTLEY SYSTEMS, INC., AND PALANTIR TECHNOLOGIES, INC. (collectively, "Defendants"), who, in their business, received payment for "nonpossessory computer leases" ("leased time on or use of … computers") in the City, but did not register, collect, or remit taxes according to Chicago Municipal Code Ch. 3-32-020(I). On or about January 1, 2016, the City's Department of Finance issued an Information Bulletin clarifying which nonpossessory computer leases are subject to the Personal Property Lease Transaction Tax ("PPLT"). The City's PPLT imposes several requirements on anyone subject to the tax, including registering with the Chicago Department of Finance, collecting, and remitting the tax to the City. See Chicago Municipal Code Ch. 3-32-080, *Id*. at 3-32-110, *Id*. at 3-32-090; 3-23-020(I), (L).

¶ 5     The complaint alleges that between 2020 and 2022, Defendants generated several million dollars from the leases; therefore, Defendants were subject to the PPLT, yet none of them became compliant until after Relator served demand letters in October 2022. Defendants have since registered with the Chicago Department of Finance to become compliant with the PPLT and are considered "City Contractors" under the Chicago False Claims Ordinance ("CFCO"). Municipal

Code Ch. 1-22-33(c). Relator alleged "Defendants knowingly failed to register to fully collect and pay the City's PPLT, thereby failing to comply with collection and remittance requirements under the PPLT," withholding substantial revenue from the City "for at least three fiscal years leading up to the complaint."

¶ 6    Relator brought this action in part under the Illinois False Claims Act (IFCA) and in part under the CFCO. Relator alleges that Defendants violated the IFCA and the CFCO by making "false claims under the IFCA because Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to Chicago." 740 ILCS 175/4; 720 ILCS 175/3(a), (a)(1)(G); Chicago Municipal Code Ch. 1-22-020(a)(7). Relator also alleges that Defendants "knowingly concealed or improperly avoided an obligation to pay or transmit money or property to the City." Relator claims that as a result of the IFCA and CFCO violations, the City has suffered damages, including unpaid taxes, penalties, and interest.

¶ 7    On February 1, 2023, Relator filed twenty-five separate *qui tam* actions in the circuit court on behalf of the City and itself, alleging that each vendor "knowingly" presented false claims and statements material to obligations to pay or transmit money to the City in violation of the IFCA (740 ILCS 175/4(a)(1) and the CFCO (Chicago Mun. Code § 3-32). The circuit court consolidated those cases on March 29, 2023 (Case No. 23-L-1020). On May 3, 2023, the City filed a motion to dismiss Relator's complaint pursuant to 735 ILCS 5/2-619.1 (West 2022). On September 14, 2023, the circuit court held a hearing. It granted the City's section 2-615 motion, denied the City's section 2-619 motion without prejudice, and granted Relator leave to file an amended complaint. Relator amended its complaint on November 3, 2023. The City filed its motion to dismiss Relator's First Amended Complaint pursuant to Section 2-619.1 on December 8, 2023. After a hearing on

February 22, 2024, the circuit court granted the City's motion in part and granted Relator leave to file its Second Amended Complaint.

¶ 8     Relator filed its Second Amended Complaint on February 29, 2024. The complaint alleged violations of the IFCA and CFCO. Specifically, Relator requested relief for declaratory judgment because the provisions of the CFCO conflicted with the IFCA and the CFCO was an unconstitutional exercise of home-rule authority. The City filed a motion to dismiss Relator's Second Amended Complaint under 735 ILCS 5/2-615 on March 28, 2024. The City argued that (1) the CFCO "is a valid exercise of the City's home rule power that supersedes the IFCA; (2) Relator's "claims are not actionable under the CFCO, which bars actions on behalf of the City that concern the application of a City tax" and that "Relator's claims fail because relator failed to provide sufficient evidence of defendants' alleged fraud[] or of defendants' status as City contractors;" and (3) the City argued that "Relator failed to satisfy the requirements for declaratory relief."

¶ 9     The circuit court granted the motion with prejudice on June 17, 2024. It found (1) the CFCO supersedes Relator's claims pursuant to the IFCA under the City's home-rule authority; (2) Relator's claims pursuant to the CFCO were barred by *City of Chicago ex rel. Walton v. Prog Leasing, LLC*, 2023 IL App (1st) 220714; and (3) the declaratory judgment count was not justiciable and found no actual controversy between Relator and the City. This appeal followed.

¶ 10                                    II. JURISDICTION

¶ 11   The circuit court entered its final, appealable order on June 17, 2024. Relator timely filed its notice of appeal on July 16, 2024. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 12                                    III. ANALYSIS

4

¶ 13    On appeal, Relator contends the circuit court erred in dismissing its complaint under section 2-615. It argues the CFCO is an unconstitutional exercise of the City's home rule authority because its enforcement is preempted by the Illinois Constitution and Illinois common law. Relator further asserts that it can state a valid cause of action under the CFCO and that its complaint adequately states a claim for declaratory judgment. Whether dismissal was appropriate under section 2-615 presents a question of law which we review *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 14                                    A. The City's False Claims Ordinance

¶ 15    Section 1-22-020(a) of the Chicago Municipal Code allows any person (a "relator") to bring a *qui tam* lawsuit on the City's behalf for fraudulent conduct committed against the City. Chicago Municipal Code § 1-22-020(a) (amended Nov. 7, 2018). Relator brought its claim, in part, under section 1-22-020 which creates a civil claim against any individual who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the city." *Id*. § 1-22-020(a)(7).

¶ 16    Section 1-22-030(b)(1) authorizes a private civil suit "against a city contractor for a violation of Section 1-22-020 for the person [(relator)] and for the city." Chicago Municipal Code § 1-22-030(b)(1) (amended Nov. 8, 2012). The Code defines "city contractor" as:

"a person who enters into a contract or who has taken any action to obtain a contract, or any owner, officer, director, employee or agent of such person, or any subcontractor, or any person acting in concert or conspiring with such person, but shall not include any person who is a city official or employee or was a city official or employee at the time of the alleged conduct." Chicago Municipal Code § 1-22-010 (added Dec. 15, 2004).

The term "contract" is defined as"

"any agreement or transaction pursuant to which a person (i) receives or may be entitled to receive city funds or other property, including grant funds, in consideration for services, work or goods provided or rendered, including contracts for legal or other professional services, (ii) purchases the city's real or personal property or is granted the right to use it by virtue of a lease, license or otherwise, or (iii) collects monies (other than taxes) on behalf of the city." *Id.*

¶ 17 Section 1-22-030(e) provides exceptions for certain claims from the City's false claims ordinance. It provides: "In no event may a person bring an action under subsection (b) which *** (ii) concerns the application, interpretation, or enforcement of any tax ordinance, as that term is defined in Section 3-4-020 of this Code." Chicago Municipal Code § 1-22-030(e) (amended Nov. 8, 2012).

¶ 18                                        B. The City's Tax Ordinance

¶ 19 Section 3-4-020 of the Code defines "tax ordinance" as "any chapter of this Code, or other ordinance passed by the city council, that imposes a tax." *Id.* § 3-4-020. The term "tax" is defined as "any sum, other than interest, penalties or fines, payable pursuant to a revenue measure imposed under any of the chapters of this Code or under any other ordinance passed by the city council. The term 'tax' shall not include regulatory, compensation or franchise fees." Chapter 3-32 of the Code, titled the "Chicago Personal Lease Transaction Tax" ("PPLT"). Chicago Municipal Code § 3-32-010 (added Dec. 15, 1992)), imposes a tax on personal property lease transactions (Chicago Municipal Code § 3-32-030(A) (amended Nov. 24, 2020)). The lessor is obligated to collect any tax imposed from the lessee at the time of the transaction and remit the tax to the City. Chicago Municipal Code § 3-32-070(A) (amended Nov. 19, 2008). "In the event that a lessor fails to collect or remit the tax required to be collected by this section, the lessor shall be liable to the city for the

amount of such tax." *Id*. If the lessor does not collect the tax, the lessee must file a return and pay the tax to the City. Chicago Municipal Code § 3-32-080(B) (amended Nov. 16, 2011).

¶ 20                              C. The City's Home Rule Authority

¶ 21   "The City is a home rule unit." *Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 20. The 1970 Illinois Constitution gives broad authority on home rule units. *Palm v. 2800 Lake Shore Drive Condominium Association,* 2013 IL 110505. Article VII, section 6(a), of the Illinois Constitution provides:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

¶ 22   Thus, the City, as a home rule unit, gains its power to regulate for the protection of the public safety directly from the constitution. This power does not depend on a grant of authority by the General Assembly. *City of Chicago v. Roman*, 184 Ill. 2d 504, 512-13 (1998). Powers and functions of home rule units must be construed liberally. Ill. Const. 1970, art. VII, § 6. Constitutional power of home rule units is intentionally broad, but the General Assembly may preempt the exercise of a home rule unit's powers by expressly limiting that authority. In article VII, section 6(h) the General Assembly "may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(h). The General Assembly codified in Section 7 of the Statute on Statutes (5 ILCS 70/7 (West 2016)) and Section 5 of the Home Rule Note Act (25 ILCS 75/5 (West 2016)), the principle being if the legislature intended to limit or deny the exercise of a home rule unit's powers, it must provide an express statement to that effect. *Palm*, 2013 IL 110505, ¶ 31. Our supreme court has acknowledged

Illinois courts may determine an exercise of home rule authority to be beyond the scope of local governmental affairs where a substantial state interest is implicated. *City of Chicago v. StubHub Inc.*, 2011 IL 111127, ¶ 22.

¶ 23                                    D. Relator's Claim

¶ 24    First, Relator claims the CFCO is an unconstitutional exercise of the City's home rule authority. Specifically, Relator argues (1) the State has a stronger interest in the adjudication of false claims than the City (2) the State has traditionally played a greater role in the adjudication of false claims submitted to the State rather than the City and (3) the Illinois Constitution and Illinois common law expressly preempt the City's exercise of home rule authority to adopt and enforce the CFCO. It further argues the CFCO conflicts with the IFCA and Article VI of the Illinois Constitution because the CFCO's prohibition of a false claim action involving the application, interpretation or enforcement of any Chicago tax ordinance is more stringent than the IFCA and violates Article VI by controlling what causes of action may be filed within the City's corporate limits.

¶ 25    The issue of preemption presents a question of law that requires interpretation of the Code and the ordinance; accordingly, our review is *de novo*. *International Association of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 11. The primary objective of statutory interpretation is to ascertain and give effect to the intent of the legislature. *O'Connell v. County of Cook*, 2022 IL 127527, 21. The most reliable indicator of legislative intent is the statutory language, which must be given its plain and ordinary meaning. *Id*. Statutory language must be interpreted considering the statute as a whole and in conjunction with related provisions, not in isolation. *Id*. ¶ 28.

¶ 26    We find the CFCO is a valid exercise of the City's home rule authority, does not conflict with the IFCA, is not preempted by the Illinois Constitution or Illinois common law, and supersedes the IFCA to the extent the enactments conflict with each other because the General Assembly has not included specific language limiting or denying the power or function of the City's home rule authority in this area. *Lintzeris*, 2023 IL 127547; See also 5 ILCS 70/7 (West 2022) (any law which "denies or limits any power or function of a home rule unit" must include "specific language limiting or denying the power or function.")

¶ 27    Here, the ordinance addresses a local problem: the submission of false claims to the City. The ordinance allows private citizens and the City to sue on its behalf to recoup losses from false claims. A review of the ordinance shows that it does not affect any other units of government, thus it pertains to the City's government and affairs. We find *Lintzeris* instructive. In *Lintzeris*, our supreme court determined the regulation of vehicles pertained to the City's government and affairs although the State also played a "statewide role in the regulation of vehicles." *Lintzeris*, 2023 IL 127547, ¶ 46. The court explained that "comprehensive state regulation cannot be the basis to 'render an area entirely outside of local control.'" *Id*. Like *Lintzeris*, although the State may have a comprehensive regulation on false claims, the CFCO addresses a local problem, false claims against the City - which is within the City's home rule powers.

¶ 28    Finally, Relator argues the circuit court erred in dismissing its complaint as it is not barred by *City of Chicago ex rel. Walton v. Prog Leasing, LLC*, 2023 IL App (1st) 220714 for that case does not address the issue of constitutionality.

¶ 29    In *Prog Leasing*, this court held a *qui tam* action was barred by provision in Chicago's false claim ordinance excluding claims concerning "the application, interpretation or enforcement of any tax ordinance." As noted above, we have found the CFCO to be a valid exercise of the City's

home rule authority. We find Relator's complaint is barred by section 1-22-030(e) of the Chicago Municipal Code. The plain language of section 1-22-030(e) bars private actioners that "concerns the application, interpretation or enforcement of any tax ordinance, as that term is defined in section 3-4-020 of this Code." Chicago Municipal Code § 1-22-030(e) (amended Nov. 8, 2012). Section 3-4-020 defines a tax ordinance as "any chapter of this Code, or other ordinance passed by the city council, that imposes a tax." Id. § 3-4-020. The term "concerns" is not limited in any way by the statutory language, showing an intent to broadly exclude claims related to the imposition of a tax. Chapter 3-32 of the Municipal Code imposes a tax on personal property lease transactions. Because Relator's claim concerns the application, interpretation, or enforcement of a tax, its claim is barred. *City of Chicago ex rel. Walton*, 2023 IL App (1st) 220714.

¶ 30                              IV. CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 32    Affirmed.