(No. 45689.

MILTON ROZNER, Appellant, v. MARSHALL KORSHAK *et al.,* Appellees.

*Opinion filed Sept. 25, 1973.—Rehearing denied Nov. 28, 1973.*

HERBERT C. GOLDMAN, IRWIN D. ROZNER and LAWRENCE WALNER, all of Chicago, for appellant.

RICHARD L. CURRY, Corporation Counsel, of Chicago (WILLIAM R. QUINLAN, GAYLE F. HAGLUND and FRANK G. SULEWSKI, Assistants Corporation Counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Milton Rozner, brought this action on his own behalf, and purportedly on behalf of all owners of passenger automobiles used upon the public ways in the City of Chicago, to enjoin the enforcement of the City's wheel-tax ordinance as amended in 1972. The defendants are the City, and city officers involved in the administration of the ordinance. The circuit court of Cook County granted the defendants' motion to dismiss the complaint, and we allowed the plaintiff's motion under Rule 302(b) to appeal directly to this court (50 Ill.2d R. 302(b)).

Chapter 29 of the Municipal Code of Chicago is entitled "Wheel Tax Licenses." Section 29—2 makes it unlawful for any motor vehicle owner residing within the city to use the vehicle upon the public ways of the city unless it is licensed as provided in the ordinance. Prior to 1972, section 29—5 divided passenger automobiles into two classes according to their horsepower and fixed the fees accordingly, and section 29—12 provided that all revenues derived from the license fees be used to pay the cost of street and alley improvement, repair, and maintenance. By the 1972 amendment passenger automobiles

were divided into three categories instead of two, and the fees were increased. The purposes for which the revenue was to be used were also broadened to include traffic-law enforcement, automobile emission control testing, and such other uses as should be authorized by the city council.

The plaintiff's primary contention is that the amended ordinance is invalid because the increased fees and broadened uses of the revenues collected were not authorized by the General Assembly. He asserts that the City's status as a home-rule municipality is immaterial because the amended ordinance must be regarded as a "license for revenue," which, under the 1970 constitution, cannot be imposed by a home-rule municipality without specific legislative authority. And in any event, he contends, even if the amended ordinance could be regarded as a proper exercise of the City's home-rule power, its authority to enact the ordinance was rescinded by legislative amendments to the Motor Vehicle Code.

The relevant provisions of section 6 of article VII of the constitution of 1970 are: Paragraph (a), which provides that any municipality with a population of more than 25,000 is a home-rule unit and that "except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs"; paragraph (e), which states that a home-rule unit shall have only the power that the General Assembly may provide "to license for revenue," and paragraph (g), which provides that (with exceptions not here pertinent) the General Assembly, by a three-fifths vote, may deny or limit the power of a home-rule unit to tax.

The plaintiff's argument derived from the limitation upon the power of a home-rule unit "to license for revenue" is based upon a misunderstanding of the meaning of that phrase. The power to regulate and the power to tax are distinct powers, but each may be exercised by the

imposition of a license fee. (*Arends v. Police Pension Fund of Peoria (1955), 7 Ill.2d 250, 253; Lamere v. City of Chicago (1945), 391 Ill. 552, 558-59.*) The phrase "to license for revenue" describes those situations in which a governmental unit that did not have the power to tax attempted to raise revenue by the exercise of its police power. (See *City of Chicago Heights v. Western Union Telegraph Co. (1950), 406 Ill. 428, 433-34; Lamere v. City of Chicago (1945), 391 Ill. 552, 558-59.*) Section 6(e) of article VII expresses a continuation of the general prohibition against such a use of the police power to produce revenue. See Report of the Local Government Committee, 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1673-75.

In the present case the City of Chicago has not attempted to tax under the guise of its power to regulate. Its "Wheel Tax License" ordinance is frankly a taxing measure (*City of Chicago v. Hastings Express Co. (1938), 369 Ill. 610, 615-16; Ayers v. City of Chicago (1909), 239 Ill. 237, 246-47*), and is within the power of the City under section 6(a) of article VII. Unless, therefore, the power to enact such a tax was limited by the General Assembly under section 6(g) of article VII, the amended ordinance is a proper exercise of the City's home-rule power to tax.

We are thus brought to the contention that the General Assembly has limited the power of home-rule units to enact wheel-tax ordinances. The plaintiff asserts that the City's ordinance as amended in 1972 is invalid because the "General Assembly by a law approved by the vote of three-fifths of the members elected to each house" has denied to home-rule units the power to enact "wheel tax ordinances" which deviate from the authority granted by the General Assembly. Prior to the adoption of the constitution of 1970 with its grant of home-rule powers, the General Assembly had for many years authorized municipalities to impose vehicle taxes or license fees in

specified amounts. (See *e.g.,* Ill. Rev. Stat. 1971, ch. 24, par. 8—11—4.) The use which could be made of the funds collected from such taxes was also specified in that section. And for many years section 2—121 of the Illinois Vehicle Code, and its predecessors, had provided that the owner of a motor vehicle who had obtained a State vehicle license should not be required, by any municipality other than the one in which he resides, to pay a tax or license fee for the use of his vehicle. (See, *e.g.,* Ill. Rev. Stat. 1963, ch. 95½, par. 32a; Ill. Rev. Stat. 1971, ch. 95½, par. 2—121.) The limitations contained in these sections were, of course, superseded with respect to home-rule units by the adoption of the constitution of 1970.

It is the contention of the plaintiff, however, that the pre-existing legislative limitations were reinstated by an amendment to section 11—211 of the Vehicle Code, which was approved by the vote of three fifths of the members of each house, and became a law after the effective date of the constitution of 1970.

The changes in section 11—211 which the plaintiff contends had the effect of withdrawing the power granted to home-rule units by the 1970 constitution are shown, with the added material underscored and the deleted material bracketed and stricken.

> "No owner of a motor vehicle shall be limited as to speed upon any public place, at any time when the same is or may hereafter be opened to the use of persons having or using other vehicles, nor be required to comply with other provisions or conditions as to the use of such motor vehicles [or motor bicycles] except as in this Chapter provided, and except as is provided in this Act."

The significant change is the insertion of the words "of a motor vehicle." The reason for the insertion of those words appears from an examination of the two preceding sections, 11—209 and 11—210. The first of these is concerned with the regulation of motor vehicles in parking areas connected with shopping centers, schools, hospitals, and the like, and it defines the term "owner" to mean "the

actual legal owner of the shopping center parking area *** or a person having the legal right through lease or otherwise, to manage or control said property." (Ill. Rev. Stat. 1971, ch. 95½, par. 11—209.) The second preceding section is concerned with the authority of "the owner of real property used by the public for purposes of vehicular travel by permission of the owner and not as [a] matter of right." (Ill. Rev. Stat. 1971, ch. 95½, par. 11—210.) The added words in the amended section 11—211 appear to have been intended to eliminate the possibility of misunderstanding as to the meaning of the word "owner" in that section, and not to restrict the taxing powers of all home-rule units.

While section 6(g) of article VII authorizes the General Assembly, by a law approved by three fifths of the members of each house, to deny or limit the power of a home-rule unit, it does not follow that every statute relating to the powers of municipalities generally will, if adopted by a three-fifths vote, have a bearing upon the powers of those municipalities which are home-rule units. The powers which those units have received under section 6 of article VII of the constitution of 1970 are in addition to the powers heretofore or hereafter granted by the General Assembly to other municipalities. The kind of inadvertent restriction of the authority of home-rule units for which the plaintiff contends can be avoided if statutes that are intended to limit or deny home-rule powers contain an express statement to that effect. The statute before us contains no indication of a restrictive purpose, and we hold that it had no restrictive effect.

The plaintiff also argues that both the City's wheel-tax ordinance as amended, and its predecessor, are "constitutionally offensive because they are vague, indefinite, uncertain, incomplete, inconsistent, contain an unwarranted delegation of legislative power to an administrative officer, and constitute an indefinite levy." His primary objections are that the ordinances do not define "horse-

power," a term which he says is capable of several definitions, and that they delegate to an unspecified city official the duty to define the term. A similar argument was made and rejected in *Bode v. Barrett (1952), 412 Ill. 204, 230-31, aff'd (1953), 344 U.S. 583, 97 L. Ed. 567, 73 S. Ct. 468,* concerning the term "gross weight of maximum load" contained in section 9 of the Illinois Motor Vehicle Law. (Ill. Rev. Stat. 1951, ch. 95½, par. 9.) The court in *Bode* relied on the fact that the challenged language had been in the statute since its original enactment and that it had been well understood and had caused no confusion over the 32 years of its existence. The same can be said of the term "horsepower," which has been in the Chicago wheel-tax license ordinance for many years. The plaintiff's contention that the amended ordinance and its predecessor are unconstitutionally vague must therefore fail.

The plaintiff further contends that the classification of automobiles on the basis of horsepower for taxing purposes is unreasonable, arbitrary, and discriminatory, and violates the equal-protection clause of the fourteenth amendment to the United States Constitution and section 2 of article I and section 2 of article IX of the Constitution of Illinois. We disagree. The use of horsepower as a method of classification for automobile license fees has long been held reasonable (see, *e.g., Hendrick v. Maryland (1915), 235 U.S. 610, 622, 59 L. Ed. 385, 391, 35 S. Ct. 140, 142; Lee v. State (1926), 163 Ga. 239, 242-43, 135 S.E. 912, 913-14; Fisher Bros. Co. v. Brown (1924), 111 Ohio St. 602, 614-20, 146 N.E. 100, 103-04; Ex Parte Kessler (1915), 26 Idaho 764, 774-76, 146 P. 113, 115-16*), and we see no reason to disturb that result.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*