THE ILLINOIS LIQUOR CONTROL COMMISSION, Plaintiff-Appellant, *v.* THE CITY OF JOLIET *et al.*, Defendants-Appellees.

(No. 74-97; █

Third District—March 5, 1975.

28

Edward S. Fusek, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Fred F. Herzog, Assistant Attorney General, of counsel), for the People, James M. P. D'Amico, of Joliet, for the City of Joliet, Thomas R. Bobak, of Calumet City, for the City of Calumet City and Robert Stefanisk, Ancel, Blink, Diamond & Murphy P.C., of Chicago, for the City of Berwyn and Emil Vagin, Mullins & Devine, of Chicago, for Robert Sell.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The Illinois Liquor Control Commission appeals from a judgment of the Will County Circuit Court upholding an ordinance of the City of Joliet, Illinois. The action was instituted to invalidate the Joliet City

Ordinance which prohibited the sale to and consumption of alcoholic beverages by persons under the age of 21. Both parties filed motions for summary judgment. The circuit court judgment was entered upholding the ordinance of the City of Joliet as indicated.

Under the statutes of the State of Illinois, the sale to and consumption of alcoholic beverages by persons under 21 years of age had been prohibited. (Ill. Rev. Stat. 1971, ch. 43, pars. 131, 134a and 183.) Effective October 1, 1973, the Illinois legislature amended those sections (by P.A. 78-26) to reduce the age for sale to and consumption of beer and wine to 19 years of age. In the meantime, the City of Joliet, a home-rule municipality, enacted its Ordinance No. 6060, effective October 3, 1973. This ordinance readopted prior provisions of the Joliet City Code which (as had been provided by former State law) prohibits the sale to and consumption by persons under 21 years of age of alcoholic beverages.

As a result of the variance in the State act, which had reduced the so-called "drinking age" for beer and wine to 19, and the Joliet ordinance, which prohibited such sale and consumption by persons under 21 years of age, the present action was instituted.

The plaintiff-commission contended that the drinking age was set by State law and could not be altered by a municipality within its own jurisdiction even though it is a home-rule unit. The trial court found, as a matter of law, that the City ordinance should prevail within the Joliet city limits. As a result of such litigation, the issue before us is very simply whether a home-rule municipality may set a higher minimum drinking age than is established by State statute.

■■ The plaintiff-commission contends initially that liquor control is a subject exclusively for State law and that the broad grant of home-rule power as found in the 1970 Illinois Constitution, article VII, section 6(a), was not intended to cover the regulation of alcoholic beverages. We do not agree with this contention. The Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, pars. 94 et seq.) was passed in 1933 and constitutes the general framework for the regulation of the liquor industry in the State of Illinois. The Act, however, grants broad powers to municipalities to set their own standards for closing hours, Sunday sales, licensing, or even to completely prohibit the sale of intoxicating liquor. (See Ill. Rev. Stat. 1973, ch. 43, pars. 110, 129, and 166 et seq.) It is true that some of these powers must be exercised in a manner consistent with law (ch. 43, par. 110), and the cases in this State have held that municipalities may not regulate the liquor industry except as expressly permitted by the State. (*Heidenreich v. Ronske*, 26 Ill.2d 360, 365, 187 N.E.2d 261 (1962); *Sager v. City of Silvis*, 402 Ill. 262, 265, 83 N.E.2d 683 (1949).) These expressions in the Illinois Supreme Court are simply a statement of the

so-called "Dillon's Rule," so labeled because it found expression in 1 Dillon, Municipal Corporations 448 (5th ed. 1911). The so-called rule is a pronouncement to the effect that a local government has only those powers expressly conferred upon it by the State, together with such powers as may be fairly implied or incidental thereto. This rule, however, is not applicable in the case of home-rule municipalities, and such municipalities may freely govern themselves except as restricted by the State, according to the home-rule provisions of the 1970 Illinois Constitution, article VII, section 6 (*Kanellos v. County of Cook,* 53 Ill.2d 161, 166, 290 N.E.2d 240 (1972); see also 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1616-17 (Local Government Committee Report) (hereinafter cited as Proceedings)). It is provided in the 1970 Illinois Constitution at article VII, section 6(a), that a home-rule unit "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare;  *  *  *."

■■ Liquor control is unquestionably a matter involved in the protection of public health, safety, morals and welfare (*Daley v. Berzanskis,* 47 Ill.2d 395, 398, 269 N.E.2d 716 (1971), *cert. denied,* 402 U.S. 999). It is apparent that the control of liquor has been a power and function pertaining to government and the affairs of a municipality—a fact which was recognized by the legislature over the years as it continued to give local governments broad power to determine local liquor regulations. It is obvious then that liquor control is within the scope of the home-rule powers granted by article VII, section 6(a), and cannot be limited except as provided in other sections of the home-rule provisions.

The limiting provisions are sections 6(g) to 6(i). The first of the limiting provisions, section 6(g), deals with the legislative preemption of certain areas (by a 3/5 majority) and is not relevant to our consideration of the precise issue referred to. The next provision, section 6(h), is that "[t]he General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit  *  *  *."

■■ In determining whether or not the legislature has provided "specifically by law for the exclusive exercise" of power by the State, we note primarily that a home-rule unit acting in a proper sphere of authority is not bound by legislative enactments prior to 1970. (*Kanellos v. County of Cook,* 53 Ill.2d 161, 290 N.E.2d 240 (1972); *People ex rel. Hanrahan v. Beck,* 54 Ill.2d 561, 301 N.E.2d 281 (1973).) This is true even in a field where both the State and the home-rule unit may exercise power concurrently (*Peters v. City of Springfield,* 57 Ill.2d 142, 311 N.E.2d 107 (1974)). The language of section 6(h) indicates that, to exclude the

exercise of home-rule powers in a certain field, the legislature must expressly say so in a statute. The supreme court of this State has also confirmed such rule in *Rozner v. Korshak,* 55 Ill.2d 430, 303 N.E.2d 389 (1973).

■■ The same general observation was made in an article in the Illinois Bar Journal in which the author concludes from the precedent of *Clarke v. Village of Arlington Heights,* 57 Ill.2d 50, 309 N.E.2d 576 (1974), and from the section itself that "the concurrent authority concept will not be construed as restriction on home-rule powers unless it is specifically invoked" (Froehlich, *Illinois Home Rule in the Courts,* 63 Ill. B.J. 320, 328 (Feb. 1975)). Nevertheless, we agree with plaintiff that exclusivity may be expressed in other ways, notably by enactment of a comprehensive regulatory scheme, or by establishment of a State agency for the purpose of a comprehensive regulatory scheme (See 7 Proceedings 1615-44; but see also indications that framers' intent was for the legislature to expressly State exclusivity, at 4 Proceedings 3059, 3331 (delegate Wenum) and 3110-12 (chairman Parkhurst)).

We note that the Illinois Bar Journal author (Froehlich) (63 Ill. B.J. 320, 328) notes that the open meetings law was amended in 1973 (Ill. Rev. Stat. 1973, ch. 102, par. 46) to expressly include a statement of relationship to home rule, and that this was an indication by the legislature that it realizes that it may have to deal with these problems by making express restrictions or permitting home-rule units to establish their own regulatory measures.

■■ The broad delegations of power to local government found throughout the Act indicate the legislature's desire to permit substantial local control over the liquor industry. As we interpret the language as found in the Liquor Control Act, and on the basis of section 6(i) of article VII of the 1970 Illinois Constitution, we find that there is no specific limitation expressly stating a desire to pre-empt the field. We, therefore, conclude that the State has not pre-empted the area of liquor control so that home-rule units are prohibited from exercising police power in this area.

Since this is so, the field of liquor control is one in which the State and the home-rule unit may exercise power concurrently. The relevant provision becomes section 6(i) which provides:

> "(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

Plaintiff contends that by enacting Public Act 78-26 (the amendment

permitting sale of beer and wine to persons at least 19 years of age), the legislature pre-empted control of the drinking age from the concurrent field of liquor control. They assert that in any case, there is a conflict between P.A. 78-26 and the Joliet ordinance which must, by virtue of section 6(i), be resolved in favor of the State statute. We believe, however, that this situation appears to be covered by the doctrine of *Rozner v. Korshak*, 55 Ill.2d 430, 303 N.E.2d 389. P.A. 78-26 was an amendment to existing law. In *Rozner v. Korshak*, plaintiff argued that a post-1970 amendment of the State law indicated legislative intent to pre-empt the field. The Illinois Supreme Court disagreed and said (at 55 Ill.2d 430, 435):

> "While * * * article VII authorizes the General Assembly * * * to deny or limit the power of a home-rule unit, it does not follow that every statute relating to the powers of municipalities generally will, * * * have a bearing upon the powers of those municipalities which are home-rule units. * * * The kind of inadvertent restriction of the authority of home-rule units for which the plaintiff contends can be avoided if statutes that are intended to limit or deny home-rule powers contain an express statement to that effect. The statute before us contains no indication of a restrictive purpose, and we hold that it had no restrictive effect."

The statute we have under consideration at the present time (P.A. 78-26) likewise contains no indication of a restrictive purpose. It is argued, however, that an indication of a restrictive purpose could emanate from the statute even though there is no express restriction on home-rule powers. The issue appears to turn on the meaning of the language "specifically limit" found in section 6(i). The question remains to what extent, if at all, does P.A. 78-26 "specifically limit" the power of a home-rule unit to control the liquor trade.

The original draft of what is now section 6(i) is found in the wording of section 3—2(c) of the Local Government Committee proposal to the effect that the home-rule units could concurrently exercise any proper power "not declared to be exclusive, subject to limitation provided by law." (7 Proceedings 1578.) We see no substantive difference in the two drafts, except that the addition of the word "specifically" in the final draft might put more of an affirmative burden on the legislature to express an intent to limit or deny home-rule powers.

A review of the Constitutional Convention proceedings suggests that the questioned language was to be an intermediate type of limitation. Thus, rather than give full control of the field to local governments or pre-empt the entire field for itself, the legislature could partially restrict

home-rule powers by setting certain standards and limitations, beyond which the local units could not go. See particularly the comments of Chairman Parkhurst (4 Proceedings 3110-12; Local Government Committee Report, 7 Proceedings 1643-44).

■■ We note that the primary provision involved here in section 12 of article VI of "An Act relating to alcoholic liquors," as amended by P.A. 78-26 (Ill. Rev. Stat. 1973, ch. 43, par. 131), establishes the basic rule that "no person * * * shall sell, give or deliver such alcoholic liquor to another person under the age of 21 years * * *." Then in section 12(b), there is excluded from that prohibition the transfer of beer or wine to persons at least 19 years of age. Thus, the statute prohibits the sale and consumption of hard liquor to persons under 21 and of beer and wine to persons under 19. It says nothing about an absolute right of persons older than 19 to purchase or otherwise receive alcoholic beverages. A general rule which may have some applicability to the issue before us is found at 56 Am. Jur. 2d *Municipal Corporations* § 374, at pages 408-409 (1971), where it is said:

> "The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory, and the only difference between them is that the ordinance goes further in its prohibition but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot co-exist and be effective."

As we have noted, section 12, as amended by P.A. 78-26, is essentially a prohibitory statute. The ordinance in question does not attempt to authorize anything that the statute prohibits nor does it prohibit anything which the legislature has expressly authorized. There is language in section 13a that "a person at least 19 years of age may consume beer and wine" which might be construed as an express license or authoriza-

tion, but it is stated in the context of an exception to the general prohibition, and the word "may" is not the type of express authorization we believe necessary to indicate legislative intent to completely preclude home-rule units from legislating in the field.

■■■ We do not doubt the power of the State to exclude municipalities totally from the field of liquor control, or even to merely establish a state-wide minimum age for drinking which cannot be raised by any local governments, if so specifically delineated in the legislation. We note, however, that as of 1970, as a result of the new constitution of this State, there has been a drastic change in the relationship of local governments to the State. In the broad spheres of taxation, the police power, and others, home-rule units need no longer look for specific statutory permission to make a law. Rather, they need only to be sure that the legislature has not clearly denied or limited the powers of the municipality in a certain field. Given the language and the spirit of the home-rule provisions in the constitution, and, also, the recent Illinois Supreme Court decisions, we are extremely reluctant to strike down a home-rule ordinance as conflicting with State law, unless the legislature has clearly manifested an intention that such should be the result.

There appear to be no vested rights pertaining to alcoholic liquors (*Maywood-Proviso State Bank v. City of Oakbrook Terrace*, 67 Ill.App. 2d 280, 290, 214 N.E.2d 582 (1966)). A city may completely prohibit the sale of alcoholic beverages under the local option provisions (or under home-rule power). We see nothing in the law of this State which prevents a home-rule unit from prohibiting just the sale or consumption by persons under 21 of such beverages, since this does not run counter to express prohibitions of State statutes.

While the Commission argues that permitting such local variances would be confusing in our highly mobile society, and would cause problems for State law enforcement officers, yet the very nature of home rule is "that communities be able to differ in the things they do and the way in which they do them." (4 Proceedings 3059 (delegate Wenum).) In the words of Chairman Parkhurst to the Constitutional Convention at 4 Proceedings 3044:

> "By the very nature * * * home rule * * * does encourage disparity; it does encourage variety; it does give autonomy to a local unit of self-government to provide for the needs of the people in that community. * * *
>
> * * * very likely we will have un-uniform, varied, fragmented exercises of broad local powers with home rule. That's the very nature of it, and if you believe in home rule, you accept that, be-

cause it is true that different communities, different counties, different municipalities need to have different kinds of power exercise to take care of the needs of the people. * * *"

■■ We, therefore, conclude that the trial court was right in finding that the Joliet ordinance may stand together with the State law and that the ordinance would control inside the jurisdictional limits of the Joliet City Council, that is, the city limits.

■■ A final contention is made that the ordinance deprives persons 19 and 20 years of age of their civil rights to drink beer and wine. It is clear from the record that the liquor commission has no standing to raise the rights of third parties, *i.e.*, 19 and 20 year olds. The rule is well established in the United States Supreme Court and elsewhere, that "one may not claim standing * * * to vindicate the constitutional rights of some third party" (*Barrows v. Jackson*, 346 U.S. 249, 255, 97 L.Ed 1586, 1594, 73 S.Ct. 1031 (1952)). While the rule is subject to exceptions there are none even remotely applicable to the cause before us. The Commission simply has no real interest in the civil rights of the 19 and 20 year olds even if such rights would be violated by the Joliet ordinance. We conclude that the Commission has no standing to raise this issue.

We might observe, in passing, that if the contention of the Commission were sound, no local option laws could stand since we could not have alternate "dry" and "wet" areas in the State, nor, in fact, could there be a variation as between States, where one State (Indiana) would allow only those 21 years or older to drink beer, while another State (Ohio) would permit the consumption of beer by those 18 years and older.

We must conclude, therefore, on review of the Constitutional Convention Proceedings, the provisions in the constitution, the State statutes, as well as the precedents in the Illinois courts, that the Joliet ordinance may stand together with the State law and that the order and judgment of the Circuit Court of Will County should be and is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.