2025 IL App (1st) 241273

First District
Third Division
May 28, 2025

No. 1-24-1273

RACHEL ZIBRAT,

        Plaintiff-Appellant,

v.

THE CITY OF CHICAGO,

        Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the Circuit Court
of Cook County.

No. 22 CH 8948

The Honorable
Eve M. Reilly,
Judge Presiding.

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant, the City of Chicago (City), assesses a "wheel tax license fee," commonly known as a "city sticker," on vehicle owners living in the City. Beginning in 2011, vehicle owners who fail to purchase a city sticker by the required purchase date are assessed an additional charge, which the ordinance describes as a "late fee."[1] Plaintiff Rachel Zibrat, who was assessed such a charge when purchasing her city sticker after the deadline, filed suit in the circuit court of Cook County, contending that the additional charge was an impermissible fee or, if not categorized as a fee, was an unconstitutional tax. Plaintiff further alleged that, to the extent that the charge could be waived by the city clerk, the waiver provision was unconstitutional. The circuit court granted the City's motion to dismiss, finding that the charge

_____

[1]As the question on appeal revolves around the character of the charge, we refer to it as a "charge" instead of using the ordinance's label of "late fee," in order to minimize confusion.

was a tax but that the tax was constitutional. Plaintiff appeals and, for the reasons set forth below, we affirm.

¶ 2                                                    BACKGROUND

¶ 3                                          *City Wheel Tax License Fee*

¶ 4      Subject to certain exceptions, the City requires any motor vehicle owner residing in the City to obtain a city sticker in order to use any motor vehicle on the City's streets or property. Chicago Municipal Code § 3-56-020(a) (amended Apr. 10, 2013). Section 3-56-050 of the Municipal Code of Chicago (Municipal Code), which is entitled "Fees—Late Fees," sets forth the payment amounts for such stickers. Chicago Municipal Code § 3-56-050 (amended at Chi. City Clerk J. Proc. 50,825 (July 20, 2022)). As relevant to the instant appeal, the current annual charge for a passenger vehicle is $100.17. See *id.* § 3-56-050(a)(1) (providing that the amount of the annual charge shall be adjusted upward every two years based on inflation); *Chicago City Sticker FAQs*, Off. of the City Clerk, City of Chi., https://www.chicityclerk.com/chicago-city-vehicle-sticker-faq (last visited May 15, 2025) [https://perma.cc/EWF7-LEL4] (setting forth payment amounts effective February 1, 2025).

¶ 5      Under section 3-56-050, "if the applicant for a wheel tax license fails to purchase such license by the required purchase date, a late fee of $60.00 shall be assessed. Such late fee shall be in addition to the wheel tax license fee set forth in subsection (a) of this section." Chicago Municipal Code § 3-56-050(b)(1) (amended at Chi. City Clerk J. Proc. 50,825 (July 20, 2022)). Section 3-56-050 further provides that, "[u]pon an applicant's showing of reasonable cause, accompanied by appropriate documentation, the City Clerk is authorized to waive any late fee that would otherwise apply to such applicant for failure to obtain a wheel tax license by the required purchase date." *Id.* § 3-56-050(b)(5).

¶ 6    Section 3-56-150, which is entitled "Penalty," also provides, in relevant part, that "[a]ny person who fails to pay the wheel tax license fee imposed by this chapter or to display the wheel tax license emblem as required by this chapter shall be fined the vehicle-weight-based amount applicable to a violation of Section 9-64-125 for failure to display the wheel tax license emblem." Chicago Municipal Code § 3-56-150(b) (amended Apr. 30, 2014). As relevant to the instant appeal, this penalty is currently $200 for a passenger vehicle. Chicago Municipal Code § 9-100-020(c) (amended at Chi. City Clerk J. Proc. 61,150 (Mar. 15, 2023)).

¶ 7                                        *Complaint*

¶ 8    On September 9, 2022, plaintiff filed a complaint in the circuit court of Cook County, alleging that she was a resident of the City who paid an additional charge for a city sticker pursuant to section 3-56-050 of the Municipal Code. Plaintiff contended that the additional charge contained in section 3-56-050 was an impermissible fee, as it bore no relationship to defraying the costs associated with the late purchase of the city sticker. Plaintiff further maintained that the charge could not be characterized as a fine, as the City already collected a fine for the offense of failing to timely purchase a city sticker. Plaintiff sought class certification on behalf of all persons to whom the City had assessed the additional charge, as well as a declaratory judgment invalidating the charge and providing refunds of any such charges paid by class members.

¶ 9    The City filed a motion to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)), claiming that the additional charge for late purchases of city stickers "is not an administrative fee but part of the vehicle tax imposed by the Wheel Tax License Ordinance, Code Chapter 3-56." Accordingly, the City argued that the complaint failed to state a cause of action as a matter of law.

¶ 10 In response to the City's motion to dismiss, plaintiff observed that, "[n]otably, in arguing that the 'late fee' is a 'tax,' the City has foresworn any defense that the 'late fee' is related to any costs incurred by the City in collecting the 'wheel tax license' or is a 'penalty.' " Plaintiff also argued that the charge could not properly be characterized as a tax.

¶ 11 On May 18, 2023, the circuit court granted the City's motion to dismiss, dismissing the complaint without prejudice. Plaintiff was subsequently given leave to file an amended complaint.

¶ 12 *Amended Complaint*

¶ 13 In her amended complaint, plaintiff incorporated the allegations of her original complaint and added new allegations that, if the charge contained in section 3-56-050 of the Municipal Code was characterized as a tax, then it was an unlawful tax. With respect to the latter claim, plaintiff contended that the tax was improper, as (1) it varied based on the timing of payment and (2) the city clerk had the ability to waive the tax. As such, plaintiff alleged that the tax violated the uniformity clause of the state constitution and the equal protection and due process clauses of the federal constitution.

¶ 14 The City again filed a motion to dismiss the amended complaint pursuant to section 2-615 of the Code, claiming that plaintiff's complaint failed to allege two classes that were taxed differently, as required for the constitutional challenges raised in the complaint, and further claiming that any purported classifications were reasonable.

¶ 15 On December 7, 2023, the circuit court granted the City's motion to dismiss, finding that the charge for late purchases of city stickers was a tax and that the City had asserted a reasonable justification for treating those who paid on time differently than those who paid after the purchase deadline. The circuit court noted that plaintiff had alleged that the city clerk's

ability to waive the charge resulted in an unreasonable classification among the " 'class of late payers,' " but found that plaintiff had not alleged sufficient facts to support a uniformity challenge on that basis. The circuit court dismissed the amended complaint without prejudice, but granted plaintiff leave to replead.

¶ 16                                    *Second Amended Complaint*

¶ 17        In her second amended complaint—the complaint at issue on appeal—plaintiff repleaded the previously-dismissed allegations about the late charge being impermissible both as a fee and as a tax. Plaintiff also alleged that, within the classification of "late taxpayers," there was an additional classification based on the reason for the late payment. Specifically, plaintiff pointed to the fact that the city clerk was empowered to waive the late charge and contended that the lack of objective criteria in making such a decision meant that the classification between taxpayers who were required to pay the charge and taxpayers who had the charge waived was unreasonable.

¶ 18        The City filed a combined motion to dismiss the second amended complaint pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)). The City claimed that plaintiff's complaint should be dismissed pursuant to section 2-615 where the ability to waive the late charge represented a form of credit, not the imposition of a tax, and therefore did not violate the uniformity clause. The City also claimed that the complaint should be dismissed pursuant to section 2-619 (*id.* § 2-619), as she lacked standing to challenge the waiver provision.

¶ 19        On May 16, 2024, the circuit court granted, with prejudice, the City's motion to dismiss, based on section 2-619 of the Code. Plaintiff filed a timely notice of appeal, and this appeal follows.

¶ 20                                    ANALYSIS

¶ 21     On appeal, plaintiff contends that the circuit court erred in dismissing all three versions of her complaint, as the additional charge for late purchasers of city stickers contained in section 3-56-050 of the Municipal Code is impermissible, whether characterized as a fee or as a tax.

¶ 22                                *Standard of Review*

¶ 23     As noted, plaintiff's original and amended complaints were dismissed pursuant to section 2-615 of the Code, while her second amended complaint was dismissed pursuant to section 2-619 of the Code. A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Id.* We review *de novo* an order granting a section 2-615 motion to dismiss. *Id.* at 440; *Wakulich*, 203 Ill. 2d at 228. We may affirm on any basis appearing in the record (*Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007)), whether or not the circuit court relied on that basis or its reasoning was correct.

¶ 24     A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion

to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). As with a section 2-615 motion, for a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. Additionally, as with a section 2-615 dismissal, even if the circuit court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 25                                            *Fees, Fines, and Taxes*

¶ 26        Prior to turning to the merits of the parties' arguments on appeal, it is helpful to provide a brief overview of the differences between fees, fines, and taxes. The Illinois Constitution grants a home rule unit such as the City the ability to "exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). A home rule unit, however, does not have the power "to license for revenue" other than what is permitted by the legislature. *Id.* § 6(e). This represents a prohibition against using the police power to produce revenue in situations where

7

the home rule unit may lack the power to tax. *Rozner v. Korshak*, 55 Ill. 2d 430, 433 (1973); *McGrath v. City of Kankakee*, 2016 IL App (3d) 140523, ¶ 19.

¶ 27    A fee is a charge which is imposed to recoup the costs of a service (*Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 34), and it is in the nature of compensation for the services rendered (*Crocker v. Finley*, 99 Ill. 2d 444, 452 (1984)). A fee imposed by a municipality is constitutionally permissible if it bears some reasonable relation to the cost of enforcement. *McGrath*, 2016 IL App (3d) 140523, ¶ 19. While the fee need not represent the exact cost incurred, it must at least relate to such costs. *People v. Jones*, 223 Ill. 2d 569, 585 (2006).

¶ 28    Where a charge is assessed to provide general revenue, and bears no relation to the services rendered, that charge is a tax. *Crocker*, 99 Ill. 2d at 452. As noted, a home rule unit has the power to tax unless that power has been limited by the legislature. See *Rozner*, 55 Ill. 2d at 433. When it exercises its power to tax, however, that power may not be exercised arbitrarily, and the classification of those taxed must be reasonable. *Crocker*, 99 Ill. 2d at 457.

¶ 29    Finally, a fine is intended to be punitive or to act as a deterrent. *Lintzeris*, 2023 IL 127547, ¶ 34. A fine imposed by a municipality is constitutional so long as it is reasonably related to a legitimate purpose. *McGrath*, 2016 IL App (3d) 140523, ¶ 22. Where the fine is likely to act as a deterrent, it is reasonably related to a legitimate purpose. *Id.*; *Carter v. City of Alton*, 2015 IL App (5th) 130544, ¶ 37. The relevant inquiry is whether the amount of the fine is "grossly disproportionate" to the underlying offense. *Jones*, 223 Ill. 2d at 605.

¶ 30    The use of the word "penalty" in a statute or ordinance connotes a fine, not a fee. *McGrath*, 2016 IL App (3d) 140523, ¶ 21; see *Jones*, 223 Ill. 2d at 588-89. While, however, the label attached by the legislature is "strong evidence" of how a charge should be characterized, it is

not necessarily definitive, as the label cannot overcome the actual attributes of the charge. *Jones*, 223 Ill. 2d at 599.

¶ 31                    *Whether the Late Charge is a Fee, Fine, or Tax*

¶ 32        In the case at bar, the parties primarily disagree about the characterization of the late charge contained in section 3-56-050 of the Municipal Code and the effect of such a characterization. Plaintiff maintains the positions she raised in the circuit court, namely, that the charge is impermissible regardless of whether it is characterized as a fee or as a tax. The City, however, has changed its theory on appeal, now contending that the charge has characteristics of a fine, in addition to its argument below that the charge was a tax. We therefore first address plaintiff's contention that the City is precluded from arguing for the first time on appeal that the charge is properly characterized as a fine.

¶ 33                         Argument Raised for First Time

¶ 34        As noted, it is well settled that, in reviewing a motion to dismiss pursuant to either section 2-615 or 2-619 of the Code, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. See, *e.g.*, *Westhaven Properties Partnership*, 386 Ill. App. 3d at 220 (section 2-615 motion); *Raintree Homes, Inc.*, 209 Ill. 2d at 261 (section 2-619 motion). Plaintiff, however, contends that this proposition should apply only where the *issues* are the same as those raised below and that an appellee should not be permitted "a wholesale grant of leave to re-litigate the matter on new positions." While we agree with plaintiff that the better practice would have been for the City to make its argument concerning fines before the circuit court, we nevertheless cannot find that the City is precluded from raising that argument in the instant appeal.

¶ 35    First, we note that plaintiff's first two complaints were dismissed pursuant to section 2-615 of the Code, which provides for dismissal for failure to state a cause of action. Thus, the relevant inquiry was whether the allegations of plaintiff's complaints were sufficient. See *Wakulich*, 203 Ill. 2d at 228. The City challenged the original complaint on the basis that the city sticker charge was not a fee and challenged the amended complaint on the basis that the charge did not violate the uniformity clause. In other words, the City's basis for dismissal was what the charge was *not*, not what the charge *was*. While the City did argue that the charge was a tax, the ultimate determination as to dismissal concerned whether the allegations of the complaints were sufficient, not the City's theory of defense.

¶ 36    We additionally observe that the supreme court addressed a similar issue in *Jones*, in which the defendant argued that the State should be precluded from arguing that a charge was a fine before the supreme court when it had previously indicated in the appellate court that the charge was a fee. See *Jones*, 223 Ill. 2d at 598. The supreme court noted that such an argument "sounds in the doctrine of judicial estoppel" and found that the doctrine was not applicable to the case before it. *Id.* Specifically, the supreme court found that the State's positions were not factually inconsistent, as there was no dispute that the charge was imposed, but instead "were merely legally inconsistent." *Id.* The supreme court also found that the State's inconsistent positions were not made in separate proceedings, as the appeal was a continuation of the same proceedings. *Id.* Finally, the supreme court found that, since the State had not prevailed below, it did not succeed or receive any benefit from its position in the appellate court. *Id.* at 598-99. Thus, the *Jones* court found that it was appropriate to engage with the State's argument on its merits. *Id.* at 599.

¶ 37     In the case at bar, the City's position as to the characterization of the charge is not factually inconsistent with its position below. Indeed, it is not even wholly legally inconsistent, as the City's claim is that the charge bears characteristics of *both* a fine and a tax. Thus, while we agree with plaintiff that the City's newfound argument places her in the position of being forced to address the issue for the first time in her reply brief, we nevertheless cannot find that the City is precluded from raising it in the instant appeal and proceed to consider the merits of the parties' arguments.

¶ 38                                    Character of the Charge

¶ 39     As noted, the primary issue on appeal is the characterization of the charge, namely, whether it is a fee, a fine, or a tax. First, we cannot agree with plaintiff's contention that the charge is a fee. In this case, plaintiff's strongest argument in support of her position that the charge is a fee is the fact that the City has labeled it as such. Section 3-56-050 is entitled "Fees—Late fees" and sets forth the payment schedule for city stickers. Chicago Municipal Code § 3-56-050 (amended at Chi. City Clerk J. Proc. 50,825 (July 20, 2022)). Section 3-56-050(b)(1), the specific subsection at issue, further provides that "if the applicant for a wheel tax license fails to purchase such license by the required purchase date, a *late fee* of $60.00 shall be assessed. Such *late fee* shall be in addition to the wheel tax license fee set forth in subsection (a) of this section." (Emphases added.) *Id.* § 3-56-050(b)(1).

¶ 40     The best indicator of a municipality's intent in enacting an ordinance is the plain language used in the ordinance. *Saladrigas v. City of O'Fallon*, 2020 IL App (5th) 190466, ¶ 22. As such, the City's use of the term "late fee" is strong evidence of its intent in imposing the charge. See *id.* ¶ 20; see also *Jones*, 223 Ill. 2d at 599. We, however, cannot agree with plaintiff that the terminology used by the City is dispositive in this case.

¶ 41 Our supreme court has cautioned that the label attached by the legislature—here, City Council—cannot overcome the actual attributes of the charge at issue. See *Jones*, 223 Ill. 2d at 599. As noted, a fee is a charge which is imposed to recoup the costs of a service. *Lintzeris*, 2023 IL 127547, ¶ 34. Despite the fact that revenues from the sale of city stickers are allocated for road- and traffic-related purposes (see Chicago Municipal Code § 3-56-110 (adopted June 27, 1990)), our supreme court has found that the City's "Wheel Tax License" ordinance[2] is a "taxing measure," not an attempt to raise revenue under its power to regulate (*Rozner*, 55 Ill. 2d at 433). Additionally, as relevant to this case, the imposition of a late charge bears no relation to the costs of processing or issuing a city sticker, and plaintiff does not contend that it does. Indeed, as an exhibit to her complaints, plaintiff attached an article in which the officials responsible for the imposition of the charge explained that its purpose was to raise revenue by penalizing " 'scofflaws' " who purchased city stickers after the purchase deadline. Thus, in light of the fact that there is no evidence that the charge is intended to recoup any costs, we cannot find that it may properly be characterized as a fee. As such, plaintiff's original complaint, which was solely based on her contention that the charge was a fee, was properly dismissed under section 2-615 of the Code.

¶ 42 We instead agree with the City that the charge bears hallmarks of both a fine and a tax. As noted, a fine is intended to be punitive or to act as a deterrent. *Lintzeris*, 2023 IL 127547, ¶ 34. It is not unusual for a fine to be imposed as a penalty for violation of a statute or ordinance, including as a penalty for failure to pay a tax assessed by a municipality. See, *e.g.*, *Forsberg*

---

[2]We note that the version of the licensing scheme discussed by the supreme court was found in Chapter 29 of the Municipal Code. See *Rozner*, 55 Ill. 2d at 431. In 1990, however, that version of the Municipal Code was superseded by the current version, in which the licensing scheme appears in Chapter 3-56. See Chicago Municipal Code, Adopting Ordinance (adopted June 27, 1990); *id.* ch. 3-56.

*v. City of Chicago*, 151 Ill. App. 3d 354, 363 (1986) ("The legislature's power to impose penalties to aid administration and insure collection of taxes has long been uniformly recognized."). In this case, it is clear that the late charge is imposed both as a penalty for purchasing a city sticker after the due date and as a deterrent to discourage such behavior in the future. As such, it is constitutional, whether characterized as a fine or a tax. See *McGrath*, 2016 IL App (3d) 140523, ¶ 22 (a fine which is likely to act as a deterrent is reasonably related to a legitimate purpose); *Rozner*, 55 Ill. 2d at 435-36 (City's wheel tax ordinance is constitutional taxing measure).

¶ 43    We find no merit to plaintiff's contentions that the charge cannot be considered a fine. Plaintiff first contends that the City is not permitted to assess fines "without some type of process by which to establish liability or allow a challenge to liability," and, therefore, the charge at issue here cannot be a fine. We note, however, that the question of whether the *imposition* of a fine violates due process is different than the question of whether a charge itself *is* a fine. It is the latter, not the former, which is at issue on appeal. Notably, plaintiff does not contend that the amount of the charge itself is excessive. See *Jones*, 223 Ill. 2d at 605 (the relevant inquiry is whether the amount of the fine is "grossly disproportionate" to the underlying offense).

¶ 44    We also note that the cases plaintiff cites in support of her argument generally involve an administrative proceeding in the context of a challenge to the underlying offense or tax, as opposed to challenging the authority of the government to impose the penalty. See, *e.g.*, *Forsberg*, 151 Ill. App. 3d at 357-58 (ordinance provided for the ability to protest mooring tax); *Discount Inn, Inc. v. City of Chicago*, 803 F.3d 317, 318 (7th Cir. 2015) (administrative hearing determined that plaintiff had violated two ordinances). In other words, the issue is

typically whether the party has violated an ordinance, not whether the City has the authority to impose a punishment for that violation. To the extent that plaintiff's argument suggests that a motorist is not entitled to challenge the requirement of a city sticker, such is not the case, as the Municipal Code provides several affirmative defenses to the city sticker requirement. See, *e.g.*, Chicago Municipal Code § 3-56-020(b) (amended Apr. 10, 2013) (exemptions to city sticker requirement for commercial vehicles and trailers); Chicago Municipal Code § 3-56-021(b) (amended Apr. 10, 2013) (affirmative defenses based on residency or vehicle ownership). Indeed, the Municipal Code also provides defenses and exceptions specifically applicable to the imposition of the late charge itself. See Chicago Municipal Code § 3-56-050(b)(3)-(5) (amended at Chi. City Clerk J. Proc. 50,825 (July 20, 2022)); see also Chi. Adm. R. 9 (eff. Feb. 1, 2024), https://chicityclerk.s3.us-west-2.amazonaws.com/s3fs-public/Administrative%20Rules%202024.pdf [https://perma.cc/T8JS-CSF6] (providing exception for purchasers who were hospitalized or incarcerated during purchase period).

¶ 45      Plaintiff's argument also fails to recognize the character of the charge at issue in the case at bar. We observe that the type of charge at issue here is slightly unusual, as it is not the result of the City's enforcement efforts—*i.e.*, the charge is not imposed through a ticket, as would be the case with violations of the City's traffic ordinances. Instead, a purchaser effectively subjects herself to the charge by purchasing a city sticker after the purchase deadline. By attempting to purchase a city sticker, a purchaser is presumably indicating that she has not yet obtained one; otherwise, there would be no need to purchase one. The requirement to purchase a city sticker is subject to a deadline, unless an exception applies. Thus, by purchasing a city sticker after that deadline, the purchaser is effectively conceding that she is subject to the late charge—there is no further factfinding or other process necessary in order to determine her

liability under the ordinance. This is different than the more typical circumstance, in which evidence of a violation must be gathered from the City's enforcement efforts.

¶ 46     We also find unpersuasive plaintiff's suggestion that the charge cannot be a fine where it would exceed the statutory limit for municipal fines set by the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2022)). Under section 11-208.3(b)(10) of the Vehicle Code, a municipality may provide for a system of administrative adjudication of vehicular standing, parking, and compliance violations, including a schedule of civil fines for such violations and penalties for late payment of the fines. *Id.* § 11-208.3(b)(10). The Vehicle Code, however, also provides that "the total amount of the fine and penalty for any one violation shall not exceed $250." *Id.* This court has previously determined that the $250 cap applies to a violation for failure to display a city sticker. See *Blaha v. City of Chicago*, 2022 IL App (1st) 210546, ¶ 52. Plaintiff thus contends that, if the charge was a fine, the $60 charge added to the $200 penalty for failure to purchase or display a city sticker would exceed the statutory limit.

¶ 47     The charge at issue, however, is not a penalty for a violation of the city sticker requirement, but is a penalty for late purchase of the city sticker. While the former falls within the limitation set forth by section 11-208.3(b)(10) of the Vehicle Code, the latter does not. As noted, section 11-208.3 permits a municipality to provide for, *inter alia*, a "system of administrative adjudication of vehicular standing and parking violations and vehicle compliance violations." 625 ILCS 5/11-208.3(a) (West 2022). The City did so by creating the administrative adjudication system set forth in section 9-100-010 of the Municipal Code. *Blaha*, 2022 IL App (1st) 210546, ¶ 9 (citing Chicago Municipal Code § 9-100-010(a) (amended Oct. 28, 2015)).

¶ 48     Section 9-100-010 explains that the purpose of Chapter 9-100 of the Municipal Code "is to provide for the administrative adjudication of violations of ordinances defining parking,

15

standing, compliance, automated speed enforcement system, and automated traffic law enforcement system violations." Chicago Municipal Code § 9-100-010(a) (amended Oct. 28, 2015). The Municipal Code defines a " '[c]ompliance violation' " as "a violation of an ordinance listed in subsection (c) of Section 9-100-020 of this Code." Chicago Municipal Code § 9-4-010 (amended Sept. 21, 2022). Section 3-56-050, the ordinance requiring the purchase of a city sticker, is not listed in section 9-100-020(c). See Chicago Municipal Code § 9-100-020(c) (amended at Chi. City Clerk J. Proc. 61,150 (Mar. 15, 2023)). The only city sticker-related offense listed in section 9-100-020(c) is for failure to *display* a city sticker, which is a violation of section 9-64-125 of the Municipal Code.[3] See *id.*; Chicago Municipal Code § 9-64-125 (amended Nov. 15, 2023).

¶ 49    Similarly, for purposes of section 11-208.3, " 'compliance violation' means a violation of a municipal or county regulation governing the condition or use of equipment on a vehicle or governing *the display of* a municipal or county wheel tax license." (Emphasis added.) 625 ILCS 5/11-208.3(a) (West 2022). Again, section 3-56-050 governs only the purchase of the city sticker, not its display. See Chicago Municipal Code § 3-56-050 (amended at Chi. City Clerk J. Proc. 50,825 (July 20, 2022)). Thus, the cap on certain fines included in the Vehicle Code would not prevent the late charge at issue here from being characterized as a fine. Accordingly, we agree with the City that the late charge is properly characterized as a fine.

---

[3]We note that failure to display a city sticker is a violation of two ordinances, one in the traffic code (see Chicago Municipal Code § 9-64-125 (amended Nov. 15, 2023)) and one in Title 3 of the Municipal Code, which contains all of the City's tax ordinances, including the chapter governing city stickers (see Chicago Municipal Code § 3-56-150(b) (amended Apr. 30, 2014); *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 35). Section 3-56-150(b) also penalizes failure to *purchase* a city sticker (Chicago Municipal Code § 3-56-150(b) (amended Apr. 30, 2014)), but this offense is not included in section 9-64-125.

¶ 50    We also agree with the City that, to the extent that the late charge has characteristics of a tax, it is not impermissible. Plaintiff's challenge on this point is based on her claim that the different treatment of timely and nontimely taxpayers violates the uniformity clause of the Illinois Constitution. The uniformity clause provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2. Generally, to survive a challenge under the uniformity clause, a nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed and bear some reasonable relationship to the object of the legislation or to public policy. *Guns Save Life, Inc. v. Ali*, 2021 IL 126014, ¶ 20. In this case, however, plaintiff contends that the object being taxed—the vehicle—is uniform but that the *rate* of taxation is nonuniform, as it is based on the date of payment. We do not find this argument persuasive.

¶ 51    First, as plaintiff herself acknowledges, neither party has cited any authority applying the uniformity clause to a late charge imposed for failure to pay a tax. Assuming *arguendo* that such an analysis may apply in that type of case, we cannot agree with plaintiff's contention that there is one class of similarly situated taxpayers that is being taxed at different rates. Instead, we agree with the City that plaintiff's uniformity challenge is necessarily based on the distinction between vehicle owners who purchase city stickers prior to the deadline and vehicle owners who purchase city stickers after the deadline. The decision, however, as to when to purchase a city sticker is entirely within the vehicle owner's control; this is not a case in which the amount charged for a city sticker is based on, for instance, a vehicle owner's name or address or some other arbitrary characteristic. Each vehicle owner has the same opportunity to purchase a city sticker at the same rate as every other vehicle owner owning the same type of

17

vehicle. It is the vehicle owner's choice to purchase the city sticker after the deadline and thereby subject herself to the additional charge. We therefore cannot find that the choice of some vehicle owners to purchase a city sticker after the deadline represents a nonuniform classification that renders the additional charge unconstitutional. Accordingly, the circuit court properly dismissed plaintiff's first amended complaint, which was based on the uniformity clause, pursuant to section 2-615 of the Code.

¶ 52     Finally, we find no merit to plaintiff's contention that the ability of the city clerk to waive the late charge renders it unconstitutional. Section 3-56-050 provides that, "[u]pon an applicant's showing of reasonable cause, accompanied by appropriate documentation, the City Clerk is authorized to waive any late fee that would otherwise apply to such applicant for failure to obtain a wheel tax license by the required purchase date." Chicago Municipal Code § 3-56-050(b)(5) (amended at Chi. City Clerk J. Proc. 50,825 (July 20, 2022)). Plaintiff contends that this provision is facially unconstitutional, as "neither due process nor the Uniformity Clause allows such standardless administration of a tax." Although plaintiff acknowledges that she did not seek such a waiver, she nevertheless claims that she may still raise a constitutional challenge, since "it is the absence of any standard that shows the rule may never be applied in a way that satisfies due process."

¶ 53     Plaintiff, however, fails to recognize that, with respect to a vagueness challenge, a plaintiff has standing to challenge the facial constitutionality of an ordinance only where the challenged language implicates first amendment rights. *Mendez v. City of Chicago*, 2023 IL App (1st) 211513, ¶ 29; see *People v. Jihan*, 127 Ill. 2d 379, 385-86 (1989). Thus, in *Mendez*, we rejected a challenge to an ordinance, which the plaintiffs argued provided "unconstrained authority to make exceptions to the [applicable] rule without providing any objective guidance," in part

due to the plaintiffs' lack of standing to raise a vagueness challenge. *Mendez*, 2023 IL App (1st) 211513, ¶¶ 22, 29. Similarly, here, where plaintiff has made clear that she is raising only a facial challenge to the ordinance, she lacks standing to challenge the ability of the city clerk to waive the late charge. Consequently, the circuit court properly dismissed plaintiff's second amended complaint, which was based on her vagueness challenge, pursuant to section 2-619 of the Code.

¶ 54                                      CONCLUSION

¶ 55        For the reasons set forth above, we affirm the circuit court's dismissal of all versions of plaintiff's complaint. Plaintiff's original and first amended complaints were properly dismissed, pursuant to section 2-615 of the Code, where the late charge is not a fee but, instead, is permissible either as a fine or as a tax. Plaintiff's second amended complaint was properly dismissed, pursuant to section 2-619 of the Code, where plaintiff lacked standing to challenge the city clerk's ability to waive the late charge.

¶ 56        Affirmed.

*Zibrat v. City of Chicago*, 2025 IL App (1st) 241273

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-8948; the Hon. Eve M. Reilly, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas H. Geoghegan, Michael P. Persoon, and Will Bloom, of Despres, Schwartz, & Geoghegan, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Mary B. Richardson-Lowry, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Elizabeth Mary Tisher, Assistant Corporation Counsel, of counsel), for appellee. |